# Exhibit A

xg662recP kjc

SEALED - DO NOT DOCKET

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK

2   ------------------------------x

3   UNITED STATES OF AMERICA,           New York, N.Y.

4             v.                 16 Cr. ____

5   JONA RECHNITZ,

6               Defendant.

7   ------------------------------x

8                               June 8, 2016
                              3:05 p.m.

9

10   Before:

11               HON. RICHARD J. SULLIVAN,

12                           District Judge

13

14

                    APPEARANCES

15

    PREET BHARARA
16         United States Attorney for the
        Southern District of New York
17   BY:  RUSSELL CAPONE
        KAN M. NAWADAY
18         Assistant United States Attorneys

19

20   COOLEY, LLP
        Attorneys for Defendant
21   BY:  ALAN LEVINE
        LAURA BIRGER
22         NICHOLAS A. FLATH

23

24   ALSO PRESENT:

25   EMILY ROSADO, Pretrial Services

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

xg662recP kjc

SEALED - DO NOT DOCKET

1    (Case called)

2         THE COURT:  Let's take appearances.  For the

3    government.

4         MR. CAPONE:  Russell Capone and Kan Nawaday for the

5    government.  With us at counsel table is Pretrial Services

6    Officer Emily Rosado.  Good afternoon, your Honor.

7         THE COURT:  Yes, all right, Mr. Capone, Mr. Nawaday,

8    and Ms. Rosado, good afternoon.

9         For the defendant.

10        MR. LEVINE:  Alan Levine and Laura Birger from Cooley,

11   LLP, for the defendant, your Honor.

12        THE COURT:  Mr. Levine, Ms. Birger.

13        MR. LEVINE:  And with us at counsel table is Nick

14   Flath, an associate at our firm.

15        THE COURT:  Good afternoon to all of you.

16        The defendant is Mr. Rechnitz.  Am I pronouncing that

17   right?

18        THE DEFENDANT:  Yes.

19        THE COURT:  Mr. Rechnitz, good afternoon to you.

20        As I understand it, we are here for a plea to an

21   information.  I received, I guess it was Friday, maybe it was

22   Thursday, I forget which, but late last week I received an

23   application from the government to seal this courtroom and to

24   seal these proceedings and to seal the docket sheet with

25   respect to this plea today and supporting documents that were

xg662recP kjc
SEALED - DO NOT DOCKET

1    filed in connection with it, so I have issued that order.   I

2    don't think I need to do anything more.   The courtroom is

3    sealed.   I will note that for the record.   The only people here

4    are the people who been identified on the record, my law clerks

5    and interns who are sworn to secrecy and lots of burly men who

6    look like they must be with a law enforcement agency of some

7    kind.

8            Is that right?

9            MR. CAPONE:   Yes, your Honor.

10           THE COURT:   The door is locked, and we leaned the

11   chair against it as well to make sure nobody can get in.

12           Mr. Capone, tell me, then, the plan today is to

13   proceed with a guilty plea on the charges contained in the

14   superseding information, is that correct?

15           MR. CAPONE:   Yes, your Honor, as well as a waiver of

16   indictment.

17           THE COURT:   All right.

18           Mr. Rechnitz, before I accept your guilty plea today,

19   I am going to ask you some questions.   The purpose of my

20   questions is -- there are really two purposes.   The first

21   purpose is to make sure that you are pleading guilty because

22   you are guilty and not for some other reason.   The second

23   purpose is to make sure that you fully understand your rights,

24   the rights that you have as a defendant in a criminal case here

25   in the United States Courts.   So as I ask you these questions,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

xg662recP kjc

SEALED - DO NOT DOCKET

1   if you don't understand the question, tell me.  I will rephrase

2   it or I will try to make it more clear.  You shouldn't answer a

3   question if you don't fully understand it.

4          If at any point you want to confer with your

5   attorneys, that's fine.  I will give you as much time as you

6   need.  I don't want you to feel rushed in any way, all right?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  In a moment, I am going to have you take

9   an oath.  I am going to have you stand and swear that you will

10  truthfully answer the questions that I have put to you.  Once

11  you have taken that oath, obviously anything you say that is

12  false here in court, well, that would be a crime.  That would

13  be the crime of perjury or perhaps obstruction of justice, but

14  it could and would likely be a crime.  I tell you that not to

15  scare you, but just so you understand it is vitally important

16  that you be completely truthful in all your answers here today.

17         Do you understand that?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Do you have any questions so far?

20         THE DEFENDANT:  I do not.

21         THE COURT:  All right.  So let me ask you now to stand

22  and raise your right hand.

23         Do you solemnly swear that the answers you will give

24  to the questions that I put to you here today in court will be

25  the truth, the whole truth, and nothing but the truth, so help

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

SEALED - DO NOT DOCKET

1    you God?

2             THE DEFENDANT:  Yes.

3             THE COURT:  Please have a seat.

4             Mr. Rechnitz, could you tell me your full name.

5             THE DEFENDANT:  Jona Solomon Rechnitz.

6             THE COURT:  How old are you?

7             THE DEFENDANT:  33.

8             THE COURT:  How far did you go in school?

9             THE DEFENDANT:  I have a bachelor's of science in

10   business management.

11            THE COURT:  Are you now or have you recently been

12   under the care of a doctor or a psychiatrist?

13            THE DEFENDANT:  No.

14            THE COURT:  Have you ever been treated or hospitalized

15   for any kind of mental illness?

16            THE DEFENDANT:  No.

17            THE COURT:  Have you ever been treated or hospitalized

18   for any kind of addiction, including drug or alcohol addiction?

19            THE DEFENDANT:  No.

20            THE COURT:  In the past two days, have you drunk any

21   alcohol, taken any pills, or medicines, or drugs of any kind?

22            THE DEFENDANT:  Yes.

23            THE COURT:  Tell me about that.

24            THE DEFENDANT:  I have a daily dose of Xanax and of

25   Lexapro.

xg662recP kjc

SEALED - DO NOT DOCKET

1          THE COURT:  That has been prescribed by a doctor?

2          THE DEFENDANT:  Yes.

3          THE COURT:  So you are seeing a doctor for at least

4    something related to your nerves, is that what it is?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Xanax and Lexapro.

7          THE DEFENDANT:  Correct.

8          THE COURT:  How long have you been seeing a doctor?

9          THE DEFENDANT:  About a little bit over a month.

10          THE COURT:  A month, okay.  I don't want to pry into

11    your medical communications with your doctor, but is there

12    anything about this medication that affects your judgment or

13    your ability to think clearly?

14          THE DEFENDANT:  No.

15          THE COURT:  Does it affect your memory in any way?

16          THE DEFENDANT:  No.

17          THE COURT:  Is there any other medication that you are

18    taking --

19          THE DEFENDANT:  No.

20          THE COURT:  -- besides those two?

21          Anything else that affects your judgment or your

22    ability to think clearly?

23          THE DEFENDANT:  No.

24          THE COURT:  Mr. Levine, do you have any doubt as to

25    Mr. Rechnitz's mental competence or his ability to enter an

xg662recP kjc

SEALED - DO NOT DOCKET

1    informed plea?

2            THE DEFENDANT:  No, your Honor.

3            THE COURT:  Mr. Capone, do you have any such doubts?

4            MR. CAPONE:  No, your Honor.

5            THE COURT:  Neither do I.  I haven't seen Mr. Rechnitz

6    for more than five minutes, but he certainly seems to be

7    following all of my questions, answering appropriately.  Based

8    on his answers to my questions so far and based on the

9    representations of counsel, I find that Mr. Rechnitz is fully

10   competent to enter an informed plea.

11           Mr. Rechnitz, as I understand it, you wish to plead

12   guilty today, is that correct?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Do you feel you have had enough time to

15   discuss this case, the charges against you, and any possible

16   defenses you may have to those charges with your attorneys?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Do you think you have had enough time to

19   chat with them about these charges and the possible defenses

20   you may have?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Are you satisfied with your attorneys'

23   representation of you so far?

24           THE DEFENDANT:  Yes.

25           THE COURT:  What I want to do, first of all, is talk

xg662recP kjc

SEALED - DO NOT DOCKET

1    about the charges against you.  So you should have in front of

2    you an information.  Do you see that?

3            MR. CAPONE:  Your Honor, we handed up all of our

4    copies, with apologies.

5            THE COURT:  Well, take them back.

6            MR. CAPONE:  And the waiver as well.

7            THE COURT:  Let's hand those back.

8            MR. CAPONE:  Thank you, your Honor.

9            Mr. Rechnitz, I am going to have handed back to you a

10   copy of the information that sets forth the charges and another

11   document that I will ask about in a moment.

12           Looking at the information, have you seen that

13   document before, before today?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Have you read it?

16           THE DEFENDANT:  Yes, I have.

17           THE COURT:  Have you discussed it with your attorneys?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Do you have any questions about it?

20           THE DEFENDANT:  I do not.

21           THE COURT:  Would you like me to read it out loud here

22   in court?

23           THE DEFENDANT:  No, thank you.

24           THE COURT:  You think you understand it?

25           THE DEFENDANT:  Yes.

xg662recP kjc

SEALED - DO NOT DOCKET

1       THE COURT:  You should have another document in front

2   of you that's called a waiver of indictment form.  Do you see

3   that?

4       THE DEFENDANT:  Yes.

5       THE COURT:  That has a couple of lines for signatures.

6   Is one of those signatures yours?

7       THE DEFENDANT:  Yes.

8       THE COURT:  Before you signed that document, you read

9   it?

10       THE DEFENDANT:  Yes.

11       THE COURT:  And you discussed it with your attorneys?

12       THE DEFENDANT:  Yes.

13       THE COURT:  And you were able to ask them and they

14   were able to answer any questions that you may have had about

15   that document?

16       THE DEFENDANT:  Yes.

17       THE COURT:  Mr. Levine, is that your signature on the

18   advice of rights form or Ms. Birger's?

19       MR. LEVINE:  Actually, it is Ms. Birger's, and I think

20   she will answer the questions from here on out, your Honor.

21   That's all she gave me permission to do today.

22       THE COURT:  That's fine.  I have worked with her

23   before, so I know that you are telling the truth.

24       MR. LEVINE:  I understand.

25       THE COURT:  Ms. Birger, that's your signature?

xg662recP kjc

SEALED - DO NOT DOCKET

1          MS. BIRGER:  It is, your Honor.

2          THE COURT:  Before you signed it, you reviewed the

3     document and discussed what it all means with your client?

4          MS. BIRGER:  I did, your Honor.

5          THE COURT:  Maybe I will have you get a little

6     exercise and just hand that all back to my law clerk, because

7     this stuff will be docketed under seal, but nonetheless

8     docketed.

9          Mr. Rechnitz, I am going to ask you some questions

10    that I am pretty confident your lawyers have gone over with

11    you, but I don't want to leave them to chance.  Okay?

12         THE DEFENDANT:  Okay.

13         THE COURT:  I'm sure they described to you the

14    difference between an information and an indictment.  Do you

15    think you understand the difference?

16         THE DEFENDANT:  Yes.

17         THE COURT:  The way it works basically is that

18    normally before you can be charged with a crime in federal

19    court, the government would have to present its evidence to a

20    grand jury.  A grand jury consists of 23 citizens whose job it

21    is to consider the evidence presented by the government and

22    then to determine whether there is probable cause to believe

23    that a crime or crimes were committed and that you committed

24    one or more crimes.  That would be the task of the grand jury.

25         Do you understand that?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

xg662recP kjc
SEALED - DO NOT DOCKET

1          THE DEFENDANT:  Yes.

2          THE COURT:  As I said, the standard would be probable

3     cause -- so it is not beyond a reasonable doubt, which would be

4     the standard at trial -- just probable cause, is it more

5     probable than not that a crime was committed and that you

6     committed the crime.  That's what they would be asked to

7     determine.  They wouldn't have to be unanimous.  At trial they

8     would have to be unanimous.  But at the grand jury stage, they

9     just have to have a majority of the 23 would have to find that

10    that standard had been met.

11          Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  But they would also have to have a quorum

14    present.  They would have to have at least 16 members of the

15    grand jury present before they could even have a vote.  If they

16    only had 15, even if they were all unanimous, that wouldn't be

17    enough.  They couldn't do anything.

18          Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  The purpose of doing it this way, I

21    think -- it's in the Constitution, so I wasn't there, but I

22    think the purpose is to protect individuals, to basically

23    create a buffer between the government and individual

24    defendants.  This buffer, this institution, that we call the

25    grand jury was designed to carry that purpose.  There might

xg662recP kjc

SEALED - DO NOT DOCKET

1    have been some other reasons, too, but I think that is the

2    principal reason.

3              Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  You have, by signing that waiver of

6    indictment, agreed to proceed by what's known as an

7    information.  An information looks an awful lot like an

8    indictment.  In fact, it is almost indistinguishable.  The only

9    real difference is that the indictment says, "The grand jury

10   charges" and is returned by the grand jury.  The information

11   says "The United States Attorney charges," and it's not been

12   presented to the grand jury.

13             Do you understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  But you have the right to go by way of the

16   grand jury.

17             Do you understand that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Are you willing to give up that right?

20             THE DEFENDANT:  Yes.

21             THE COURT:  You understand that by proceeding this

22   way, it means that there won't be that buffer?  It will just be

23   the government bringing charges against you.

24             Do you understand that?

25             THE DEFENDANT:  Yes.

xg662recP kjc
SEALED - DO NOT DOCKET

1    THE COURT:  Do you have any questions about any of

2    these rights or any of the things I just said about the grand

3    jury?

4    THE DEFENDANT:  I do not.

5    THE COURT:  And you are comfortable waiving that right

6    to a grand jury, correct?

7    THE DEFENDANT:  Yes.

8    THE COURT:  I now want to tell you about some other

9    important rights that you have.  Again, if at any point you

10   don't understand what I am talking about or you have some

11   questions of your own, jump right in.  This is not designed to

12   be a one-way conversation with you just saying yes.  So if you

13   have any questions, let me know.

14   THE DEFENDANT:  Okay.

15   THE COURT:  What I am going to do now is talk about

16   some other rights that you have as a defendant in a criminal

17   case.  I am going to address these in two ways.  First I am

18   going to ask you about a document which I hope you have there,

19   an advice of rights form.  Do you guys have that?

20   THE DEFENDANT:  Yes.

21   THE COURT:  All right.  Great.  Good.

22   That sort of lays out in black and white the rights

23   that you have as a defendant.  I think it is always a good

24   practice to make sure that defendants read those and review

25   them with their attorney before entering a guilty plea.  I have

xg662recP kjc
SEALED - DO NOT DOCKET

1    a lot of confidence, frankly, in your lawyers, and I am sure

2    they went over this with you even without the benefit of my

3    little form, but I think it is always a good practice, so I do

4    it this way.

5            After I have asked you some questions about that form,

6    I am then going to ask you questions here in court that cover a

7    lot of the same ground.  I do it this way not because I like to

8    be repetitive, it is just that these rights are so important

9    and your understanding of them is so crucial that I don't want

10   to leave anything to chance, and I want to give you an

11   opportunity -- sometimes reading something and hearing

12   something are different things; and if at any point upon me

13   saying, "Do you understand that you have this right?" that it

14   prompts you to have a question, I want to make sure that we

15   have a chance to talk about it, okay?

16           THE DEFENDANT:  Okay.

17           THE COURT:  So let's talk about the document in front

18   of you.  Again, it is, I think, a two-page document.  On the

19   second page it has a signature line, is that right?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Is that your signature there on one of the

22   lines?

23           THE DEFENDANT:  Yes, it is.

24           THE COURT:  Before you signed that document, you read

25   it?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

xg662recP kjc

SEALED - DO NOT DOCKET

1      THE DEFENDANT:  Yes.

2      THE COURT:  And you discussed it with your attorneys?

3      THE DEFENDANT:  Yes.

4      THE COURT:  And you asked them any questions you may

5  have had about those rights and what it means --

6      THE DEFENDANT:  Yes.

7      THE COURT:  -- to waive those rights, is that correct?

8      THE DEFENDANT:  Yes.

9      THE COURT:  Ms. Birger, is that your signature on the

10 advice of rights form as well?

11     MS. BIRGER:  Yes.  Both Mr. Levine and I signed it.

12     THE COURT:  Well, I will ask you the questions.

13 Either one of you will do.

14     Before you signed it, you reviewed the rights with

15 your attorneys, Mr. Rechnitz?

16     THE DEFENDANT:  I did, your Honor.

17     THE COURT:  And you were able to answer any questions

18 he may have had about those rights?

19     MS. BIRGER:  Yes.

20     THE COURT:  Another opportunity for exercise.  I will

21 have you hand that up.  I will mark that as a court exhibit.  I

22 will mark that as Court Exhibit A.  I hang on to these.  I

23 don't typically docket them.  But if there ever is any

24 question, it will have my initials on it, it will have today's

25 date, and it will have in my handwriting, "Court Exhibit A."

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

xg662recP kjc

SEALED - DO NOT DOCKET

1          I guess the first right I wanted to go over with you,

2     Mr. Rechnitz, is your right to a speedy and public trial by a

3     jury on the charges contained in this information.

4          Do you understand that you have that right?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  So you would be entitled to have a jury

7     determine whether you were guilty or not guilty of the charge

8     contained in the information.

9          Do you understand that?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Unlike the grand jury, the trial jury will

12    be determining whether the government had proved its case

13    beyond a reasonable doubt.

14         Do you understand that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  That's a much higher standard than

17    probable cause.  "Beyond a reasonable doubt," that's a pretty

18    tall order, and at trial it is not only that the jury would

19    have to find that you were guilty beyond a reasonable doubt,

20    they would also have to be unanimous about that.

21         Do you understand that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  So a grand jury, a simple majority would

24    do; but the jury at trial would have to be a unanimous jury,

25    finding that the government had proven its case beyond a

xg662recP kjc

SEALED - DO NOT DOCKET

1    reasonable doubt.

2              Do you understand that?

3              THE DEFENDANT:  Yes, I do.

4              THE COURT:  You wouldn't have to prove that you were

5    innocent if you went to trial.

6              Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  In fact, you wouldn't have to prove

9    anything if you went to trial.  You could sit quietly and do

10   nothing.  You could quietly read the newspaper if you wanted --

11   I wouldn't advise it, but you could -- and the burden would

12   always be on the government to prove its case beyond a

13   reasonable doubt.

14             Do you understand that?

15             THE DEFENDANT:  I do.

16             THE COURT:  At trial and at every stage of your case,

17   you would be entitled to be represented by an attorney.  If you

18   couldn't afford an attorney, then one would be appointed for

19   you at no cost to you.

20             Do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  In this case, Mr. Levine and Ms. Birger

23   and Mr. Flath, they are retained lawyers, is that correct?

24             THE DEFENDANT:  Yes.

25             THE COURT:  They are with a law firm, so you are

xg662recP kjc
SEALED - DO NOT DOCKET

1        paying for them to represent you, is that correct?

2                THE DEFENDANT:  Right.

3                THE COURT:  There is nothing wrong with that.  That's

4        the way it usually works.  However, I just want to point out

5        that if you were broke, if you just were flat broke and you no

6        longer had any ability to pay these attorneys, it doesn't mean

7        that you would then have to soldier on alone.  It means you

8        could simply ask me to appoint a lawyer to represent you at no

9        cost to you and you would probably have to fill out an

10       affidavit that indicates what your financial circumstances are.

11       But if I found that you couldn't afford an attorney, then I

12       would appoint from a list of attorneys approved by the court.

13                Do you understand that?

14                THE DEFENDANT:  Yes.

15                THE COURT:  If there were a trial, then the witnesses

16       for the government would have to come into this courtroom and

17       they would have to testify here in your presence.

18                Do you understand that?

19                THE DEFENDANT:  Yes.

20                THE COURT:  They would sit right here in this witness

21       box so that you could see them and so that you could hear them,

22       and that's because you have a right to confront your accusers.

23       It also means that your attorneys would have the opportunity to

24       cross-examine those witnesses, to ask them questions, to test

25       whether they are telling the truth, to see if they know what

xg662recP kjc

1    they are talking about, to see if they are lying or confused.

2    They would have that opportunity.

3              Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  At trial, you would have the right to

6    challenge the government's evidence if you wanted to.  If you

7    thought there was a basis to keep it out, you could do that.

8    You would also have the right to call your own witnesses and

9    introduce your own evidence if you wanted to.

10             Do you understand that?

11             THE DEFENDANT:  Yes.

12             THE COURT:  As I said before, you won't have to, but

13   you would have the right to.  And if there were witnesses that

14   you wanted to call and they said to you, not a chance, I'm not

15   coming to court, it's the last place I want to be, good luck to

16   you, well, that wouldn't be the end of the story because you

17   could have subpoenas issued or other process used to compel

18   those people to come to court and to testify truthfully under

19   oath.

20             Do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  You yourself could testify at trial if you

23   wanted to.

24             Do you understand that?

25             THE DEFENDANT:  Yes.

xg662recP kjc
SEALED - DO NOT DOCKET

1     THE COURT:  You wouldn't have to.  You would have a

2 right not to.  But if you wanted to, you could testify.

3     Do you understand that?

4     THE DEFENDANT:  Yes.

5     THE COURT:  If you chose not to testify, however, you

6 should understand that the jury could attach no significance to

7 that fact.  They couldn't say, This guy Rechnitz, he must be

8 guilty, because an innocent guy would have gotten on the stand

9 and told his side of the story.  They are not allowed to draw

10 that inference.  In fact, I would remind them at trial,

11 probably multiple times, as I always do, I would remind the

12 jury that the defendant is presumed innocent; that it is the

13 government's burden to prove the defendant's guilt beyond a

14 reasonable doubt; and that the defendant has no obligation to

15 present any evidence or to testify; and that if the defendant

16 chose not to testify, if you chose not to testify, I would tell

17 the jury, You can't attach any significance to it.  You can't

18 infer that he is guilty.  In fact, to the contrary.  You have

19 to presume that he is innocent.

20     Do you understand that?

21     THE DEFENDANT:  Yes.

22     THE COURT:  If the jury returned a guilty verdict

23 against you, you then would have the right to appeal the jury's

24 verdict.

25     Do you understand that?

xg662recP kjc
SEALED - DO NOT DOCKET

1          THE DEFENDANT:  Yes.

2          THE COURT:  In fact, you would first have the right to

3    ask me to overturn the verdict.  You could ask me to find that

4    there wasn't sufficient evidence.  If I declined, if I said,

5    no, I think the jury reached a reasonable conclusion, that it

6    was a fair inference for them to draw from all of the evidence,

7    you would still have the right to appeal above me.  There is a

8    Court of Appeals that sits literally above me and they sit

9    above me figuratively, too.  Their job is to make sure I didn't

10   make any mistakes and make sure the jury didn't make any

11   mistakes, and so you would have the right to appeal the verdict

12   to the Court of Appeals.

13          Do you understand that?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Even now, Mr. Rechnitz, as you are getting

16   ready to enter a guilty plea, you have a right to change your

17   mind.

18          Do you understand that?

19          THE DEFENDANT:  I do.

20          THE COURT:  We have not yet reached the point of no

21   return.  We are pretty close, but we are not there yet.  If you

22   told me right now, I change my mind, I would like to go to

23   trial I would like to avail myself to all these rights you

24   described, that would be okay.  I wouldn't be mad at you.  The

25   government wouldn't be mad at you.  Your attorneys wouldn't be

SOUTHERN DISTRICT REPORTERS, P.C.<br>(212) 805-0300

xg662recP kjc

SEALED - DO NOT DOCKET

1    mad at you.  We all understand this is your call, and whatever

2    you decide we would we respect that.

3            Do you understand that?

4            THE DEFENDANT:  Yes, I do.

5            THE COURT:  Do you nevertheless want to go forward

6    with the guilty plea at this time?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Do you understand if you plead guilty and

9    I accept your guilty plea, that there will be no trial in this

10   case.

11           THE DEFENDANT:  I understand.

12           THE COURT:  In fact, you will have given up your right

13   to a trial and all of the other rights that I have just

14   mentioned.

15           Do you understand that?

16           THE DEFENDANT:  Yes.

17           THE COURT:  I guess with two exceptions:  Your right

18   to counsel, that will continue.  You won't give up that right.

19   Pleading guilty won't affect your right to counsel.  And I

20   guess you will still at least potentially have the right to

21   appeal, but you almost certainly wouldn't be able to appeal

22   whether or not you committed this crime once you pled guilty to

23   it.  You might be able to appeal some other things, but it is a

24   pretty tall order to come into court, to have pled guilty and

25   to acknowledge your guilt under oath and then say, I was just

xg662recP kjc

SEALED - DO NOT DOCKET

1    kidding around, I didn't mean it, and appeal on that basis.

2              Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  I should also tell you that, as a result

5    of your guilty plea today, I will sentence you or at least a

6    judge will sentence you.  It might be me, it might be another

7    judge, depending on how things work out, but ultimately you

8    will be sentenced on the basis of the crime that you pled

9    guilty to.

10              Do you understand that?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Not today.  It won't be for some months,

13    perhaps, but ultimately there is a connection between what you

14    plead to today and your sentencing.

15              Do you understand that?

16              THE DEFENDANT:  Yes, I do.

17              THE COURT:  Finally, I guess the last thing I want to

18    make sure you understand is that before I will accept your

19    guilty plea today, I am going to ask you to tell me in your own

20    words what it is you did that makes you guilty of this crime.

21              Do you understand that?

22              THE DEFENDANT:  Yes.

23              THE COURT:  That's kind of a big deal, because, as I

24    said before, nobody can make you testify.  Nobody can make you

25    really speak against your will.  But before I accept your

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

xg662recP kjc
SEALED - DO NOT DOCKET

1    guilty plea, I want to be confident that you are pleading

2    guilty because you are guilty and not for some other reason.

3    So that's why I am going to ask you to tell me what it is that

4    you did that makes you guilty before I accept your guilty plea.

5              Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you have any questions about any of

8    these rights that we have been discussing?

9              THE DEFENDANT:  I don't.

10             THE COURT:  And you are willing to give up your right

11   to a trial and all of the other rights that I have just

12   mentioned?

13             THE DEFENDANT:  Yes.

14             THE COURT:  All right.  So let's talk a little bit

15   about the charges.  I am not going to read the information.

16   You said you didn't need that.  But you are charged in one

17   count, conspiracy to commit wire fraud.  It's one count, right?

18             MR. LEVINE:  Yes.

19             THE COURT:  Conspiracy to commit wire fraud in

20   violation of a statute that's Title 18 of the United States

21   Code, Section 1349.  It references a couple of other statutes,

22   1343 and 1346, but it is basically a wire fraud conspiracy that

23   you have been charged with.

24             Do you understand that?

25             THE DEFENDANT:  Yes.

SOUTHERN DISTRICT REPORTERS, P.C.<br>(212) 805-0300

xg662recP kjc
SEALED - DO NOT DOCKET

1          THE COURT:  I am going to ask the government, I will

2     ask Mr. Capone, to summarize what are called the elements of

3     this crime.  The elements, it is kind of the building blocks,

4     the requirements of the crime.  Put it this way.  If any one of

5     these elements were missing or if any one of these elements

6     were not proven beyond a reasonable doubt, then the jury

7     wouldn't be able to convict you of this crime.  You couldn't be

8     found guilty.  If any of these elements I find have not been

9     established to my satisfaction, then I won't accept the guilty

10    plea.  So they are called the elements.  They can sound a

11    little technical.  But, frankly, they are designed so that

12    juries can understand them and so that individual citizens can

13    understand them, so hopefully they are not so complicated.  So

14    listen to Mr. Capone as he recites these elements.  If, after

15    he is finished, you have any questions about what he just said,

16    let me know, and we can discuss it a little further, okay?

17         THE DEFENDANT:  Sure.

18         THE COURT:  Mr. Capone, do you want to go over just

19    briefly the elements for Count One of the information?

20         MR. CAPONE:  Yes, your Honor.

21         To prove the honest services wire fraud conspiracy

22    charged, at trial, the government would have to prove:

23         First, the existence of a conspiracy, that is, an

24    agreement or understanding to commit wire fraud by executing a

25    scheme and artifice to defraud, to deprive, in this case, as

xg662recP kjc

SEALED - DO NOT DOCKET

1   charged in the information, first, the public of its intangible

2   right to the honest services of law enforcement and other

3   public officials and, two, to deprive the members of the

4   Correction Officers' Benevolent Association of their intangible

5   right to the honest services of a senior COBA official.

6        Second, the government would have to prove that the

7   defendant intentionally and knowingly became a member of the

8   conspiracy.

9        As to the underlying charge that the defendant will be

10  charged with conspiring to commit, the government would have to

11  prove:

12       First, that there was a scheme or artifice to defraud,

13  again, the public of its intangible right to the honest

14  services of law enforcement and other public officials and,

15  too, to the members of COBA of the intangible right to the

16  honest services of a senior COBA official;

17       Second, that the defendant willfully and knowingly

18  participated in the scheme or artifice to defraud; and

19       Third, in the execution of that scheme, the defendant

20  used or caused the use of interstate wire communications in

21  furtherance of the scheme to defraud.

22       The government would have to prove all of those

23  elements beyond a reasonable doubt.

24       The government would also have to prove that venue in

25  the Southern District of New York, which includes Manhattan and

xg662recP kjc
SEALED - DO NOT DOCKET

1    the Bronx, is appropriate by a preponderance of the evidence.

2              THE COURT:  Okay.  Thank you, Mr. Capone.

3              Mr. Rechnitz, you heard what Mr. Capone just said.  Do

4    you have any questions about those elements?

5              THE DEFENDANT:  I do not.

6              THE COURT:  You have discussed those elements with

7    your attorneys prior to today?

8              THE DEFENDANT:  Yes.

9              THE COURT:  So I won't restate them.

10             Basically conspiracy is really two elements.  The

11   consist of the conspiracy has to be proven, the purpose of

12   which was to violate the law, in this case the wire fraud

13   statute, and that portion of the wire fraud statute that

14   relates to honest services; and, second, that you knowingly

15   joined that conspiracy, that agreement, understanding the

16   illegal purpose of the conspiracy.  That's really what it is

17   about.  The rest of what Mr. Capone said was sort of fleshing

18   out what the underlying object of the conspiracy was.  So those

19   are the elements of the conspiracy.

20             Do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And the last piece that he talked about

23   was what he referred to as the venue requirement.  I think you

24   probably understand that; but, just in case you don't, in order

25   to be found guilty here in this district, this is the Southern

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

xg662recP kjc
SEALED - DO NOT DOCKET

1    District of New York, which is one of about 95 districts all

2    over the country, one of four districts in New York, in order

3    to be found guilty here, some portion of the crime has to have

4    taken place here.  If it all took place in Queens, then you

5    couldn't be found guilty here.  So the venue requirement just

6    requires that there is some connection in this district to what

7    happened, what the crime was.  But to prove venue, the

8    government doesn't have to prove that beyond a reasonable

9    doubt.  They have to simply prove that by a preponderance of

10   the evidence, which means the greater weight of the evidence,

11   so it is a much lesser standard.  But that's only with respect

12   to venue.  Everything else, all of the other elements would

13   have to be proven beyond a reasonable doubt.

14        Do you understand that?

15        THE DEFENDANT:  Yes.

16        THE COURT:  Let me tell you briefly the penalties that

17   you face for this crime.  This crime carries the maximum term

18   of imprisonment of 30 years.  It also carries --

19        MR. CAPONE:  It's 20 years, your Honor.  It would be

20   30 years if it were a bank fraud, but I think it is 20 years

21   for --

22        THE COURT:  Oh, I'm sorry.  Let me look this up.

23   Well, I will presume it is 20.  I have no reason to doubt

24   Mr. Capone, but I must have been bleary eyed when I did this

25   over the weekend.

xg662recP kjc

SEALED - DO NOT DOCKET

1    So a maximum sentence of 20 years, a maximum term of

2    supervised release of three years, and that means that, after

3    you serve whatever sentence in jail, you could still be

4    sentenced to serve three more years on supervised release,

5    which means you would be home, living in a community, but you

6    would have certain obligations that you would have to follow as

7    part of your supervised release.   And if you violated any of

8    those terms and conditions, well, then you could be resentenced

9    and returned to jail for up to three years.

10       Do you understand that?

11       THE DEFENDANT:  Yes.

12       THE COURT:  In addition, I could also impose a fine of

13   $250,000 or twice the gross gain that was derived from this

14   crime or twice the gross loss to persons other than yourself

15   that resulted from the crime.   So whichever of those three is

16   the greatest, that is the maximum fine that you have would

17   face.

18       In addition to a fine, I could also order you to pay

19   restitution to any victims of the crimes.   So to the extent

20   there were any victims who were harmed -- it could be

21   individuals or it could be entities -- I could order you to pay

22   money so that those folks are made whole.   I could also order

23   you to forfeit any of the profits or proceeds derived from the

24   crime.   So whatever monies were derived from the crime,

25   whatever property was used to further the crime, I could order

xg662recP kjc

SEALED - DO NOT DOCKET

1   you to forfeit as part of your sentence, and that would be

2   separate from any fine and separate from any restitution.

3            And then, finally, there is a $100 special assessment,

4   and that's mandatory.  That has to be paid, and that's also on

5   top of any fine, forfeiture, or restitution.

6            Do you understand those are the maximum penalties?

7            THE DEFENDANT:  Yes, I do.

8            THE COURT:  Are you a United States citizen?

9            THE DEFENDANT:  Yes, I am.

10           THE COURT:  You should understand that as a result of

11  your guilty plea, you could lose certain valuable civil rights,

12  including your right to vote, your right to serve on a jury,

13  your right to hold public office, and your right to possess a

14  firearm.

15           Do you understand that?

16           THE DEFENDANT:  Yes.

17           THE COURT:  I mentioned supervised release.  I told

18  you what that was, but I just want to make sure that it is very

19  clear that, in imposing sentence, I could impose a term of

20  supervised release that would follow any term of incarceration.

21  You will have surely terms and conditions associated with it.

22  Among those will almost certainly be that you not commit any

23  further crimes, that you not use a firearm, that you not use or

24  possess drugs.  And the way it works is if at any point during

25  the course of your supervised release you were to violate the

xg662recP kjc

SEALED - DO NOT DOCKET

1    terms and conditions of supervised release, well, then I could

2    revoke your supervised release and I could send you back to

3    jail for the full three years.  Even if you had already served

4    two years and 11 months on supervised release, if you are

5    almost done and perfect up until then, I could still impose a

6    sentence of three years for any violation and you wouldn't get

7    credit for the time you had already spent on supervised

8    release.

9          Do you understand that?

10         THE DEFENDANT:  I do.

11         THE COURT:  Are you serving any other sentence of any

12    kind at this point --

13         THE DEFENDANT:  No.

14         THE COURT:  -- state or federal?  All right.

15         I should tell you there is no parole in the federal

16    system, so whatever term of incarceration I impose, you will

17    serve that term of incarceration.  In New York State and some

18    other states, there is such a thing as parole; and the way that

19    works is that a judge may impose a sentence on the day of

20    sentencing of five years or ten years or ten to 20 years, and

21    then later, while a defendant is serving the sentence, a parole

22    board might step in and say, no, this person can come home

23    earlier.  They seem like they get it.  They are ready to

24    return.  That's not part of the federal system.  So whatever

25    sentence I impose, that is the sentence that you will serve.

xg662recP kjc

SEALED - DO NOT DOCKET

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Let me tell you a little bit more about

4    sentencing.  As I said, I am not going to impose a sentence

5    today, but the sentence you receive ultimately will be up to me

6    or to the sentencing judge if it is not me, and no one else.

7          Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  So no matter what anybody else has told

10   you, whether it is the government or your lawyers or anyone

11   else, that's not binding on the court.

12         Do you understand?

13         THE DEFENDANT:  Yes.

14         THE COURT:  The sentencing judge will determine what

15   is the appropriate sentence, and that determination will be

16   based on a number of different factors, and I want to just go

17   over with you what those factors are, because there are half a

18   dozen of them, all of which have to be balanced and carefully

19   weighed at the time of sentencing.  One of those factors

20   relates to your own personal history, facts and circumstances

21   of your life.  So the sentence has to be tailored to you as an

22   individual.  You are unique.  So the judge will obviously look

23   at your personal history, from your birth right up until now,

24   your work history, your family circumstances, your educational

25   background, your prior criminal history or lack of criminal

xg662recP kjc

SEALED - DO NOT DOCKET

1  history, you know, all the things that make you who you are.

2  Those are all relevant to sentencing, and the judge will

3  consider that in tailoring the sentence to you as a person.

4          Another factor that the judge has to consider are the

5  facts and circumstances of the crime here.  Obviously this is a

6  serious crime.  It is a felony.  But what matters is not simply

7  what the crime is called as much as what the crime entailed.

8  So the judge is going to look at the circumstances and details

9  of the crime.  What went on here?  For how long a period of

10  time?  What was your role relative to other people's roles?

11  What benefit did you receive?  What harm was caused?  All of

12  that is obviously important to determine what's the appropriate

13  sentence.  And just as the sentence has to be tailored to you

14  as an individual, so, too, does it have to be tailored to the

15  specific crime that was committed and the harms associated with

16  it.  It's important that the punishment fits the crime and that

17  the sentence imposed reflects the seriousness of the crime.  So

18  that's another factor that the court will consider and weigh.

19          A third factor that the court will consider, which is

20  a little different than the first two that I mentioned, is the

21  need to deter or discourage future criminal conduct.  So the

22  hope there is that by imposing a sentence in this particular

23  case, the judge will send a message to you so that you will

24  understand, hey, I can't do this.  This is something that's not

25  acceptable, it won't be tolerated, and it is going to lead to

xg662recP kjc
SEALED - DO NOT DOCKET

1    just more painful outcomes.  And the hope is that other people

2    who might be paying attention will also get the same message

3    without personally experiencing it.  They will see what

4    happened to you and they will say, wow, this is no fooling

5    around.  This is pretty serious, I was thinking of doing a

6    scheme like that, but it is just not worth it.  The up side is

7    far outweighed by the consequences of being prosecuted and

8    convicted and sentenced.

9          I don't have a crystal ball.  I can't predict what

10   effect my sentence will have on future conduct, but the

11   Congress has said this is something that courts have to

12   consider.  Most of us recognize that there is something to

13   this, the notion that there is a connection between punishment

14   and future behavior.  So that's something that the judge

15   obviously will take into account.

16         Another factor that the judge will have to consider

17   involves your needs while you are in custody.  So if the judge

18   determines that an incarceratory sentence is appropriate, the

19   judge will also have to consider whether you have particular

20   needs that have to be addressed.  So, you seem like a young guy

21   and a pretty healthy guy, but there are some defendants who

22   have serious physical health needs or mental health treatment

23   needs; some have substance abuse treatment needs; some,

24   frankly, have the need for more job training or educational

25   opportunities.  But whatever the needs of an individual

xg662recP kjc
SEALED - DO NOT DOCKET

1    defendant are, the goal is to make sure that the sentence

2    imposed allows them to have those needs addressed.  So I'm not

3    sure what needs, if any, you have that would have to be

4    addressed while in prison, but to the extent it is determined

5    that an incarceratory sentence is appropriate, then a

6    consideration of your needs is another factor that a court

7    would have to consider.

8            Another factor that the court has to consider is

9    something called the United States Sentencing Guidelines.  Are

10   you familiar with the sentencing guidelines?

11           THE DEFENDANT:  Yes.

12           THE COURT:  I'm sure you have discussed those with

13   your attorney or attorneys.

14           THE DEFENDANT:  Yes.

15           THE COURT:  The sentencing guidelines, at the risk of

16   telling you what you already know, I am holding up this new

17   version, which is Howard Johnson blue -- maybe you don't know

18   what Howard Johnson is, but it is a garish blue cover.  There

19   is a new edition every year, and they change the color of the

20   book every year.  This came out in November.  But the way it

21   works is that this book, which is about 5 or 600 pages long, is

22   prepared by a commission.  It is called the United States

23   Sentencing Commission.  That commission consists of some judges

24   and some lawyers and some law professors, experts in the field

25   of criminal law, and their job is to give guidance to judges

xg662recP kjc

SEALED - DO NOT DOCKET

1    like me to impose sentence on individuals.

2          So the way it works is that every crime, or type of

3    crime, is covered by a chapter in this book.  And the

4    sentencing judge is directed to go to the chapter that relates

5    to the crime involved in the case, and then the judge is

6    prompted to make certain findings of fact.  So in a case

7    involving fraud typically, one of the first inquiries is what

8    was the amount of the loss, if you could put a dollar value on

9    it.  And there are other factors.  And depending on the answer

10   to that question, the judge assigns points.

11         There are other things that the judge will consider,

12   including the role that the defendant played in the offense, if

13   they were a leader or an organizer of activity that was very

14   extensive, they might get more points.  If they were a minor

15   participant, then the judge might subtract some points.  If the

16   person, as you have, has offered to plead guilty and has

17   accepted responsibility to the crime and saves the court and

18   the government the time and resources necessary to try the

19   case, well, then they would be entitled to a reduction under

20   the book.

21         So there is a variety of questions that the judge

22   considers and answers and then assigns points.  And after

23   adding and subtracting points, the judge comes up with a number

24   that is referred to as the offense level.

25         The judge then goes to another part of this book that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

xg662recP kjc

SEALED - DO NOT DOCKET

1   relates to criminal history and, not surprisingly, a person who

2   has been convicted before of crimes and who has gone to jail

3   for those crimes, that person is going to be treated more

4   harshly than a person who has no prior involvement with the law

5   enforcement system, the criminal justice system.  So the judge

6   will go to the chapter with the criminal history and will

7   determine whether there have been any prior convictions for the

8   defendant.  If so, the judge will consider when they were and

9   how long the sentence was; and, depending upon the answers to

10  those questions, the judge will assign points and then come up

11  with another number.  That number is referred to as the

12  criminal history category.  There are six criminal history

13  categories.  Category I is the lowest and least serious.

14  Category VI is the highest and most serious.

15          Then, with those two numbers that I have just

16  mentioned -- the offense level on the one hand and the criminal

17  history on the other -- the judge goes to the back of this

18  book, where there is a chart or a table.  I don't know how good

19  your eyes are.  You probably can't see it from here, but I am

20  willing to bet a dollar that your lawyers have gone over this

21  with you.  But there is a chart or grid that's on the back

22  cover.  The first column here on the far left is the offense

23  level column.  It's numbered 1 through 43.  And the judge keeps

24  going down that column until he gets to the offense level that

25  he or she found to be appropriate.

xg662recP kjc

SEALED - DO NOT DOCKET

1        The judge then goes across these other columns, from

2    left to right, each of which represents a criminal history

3    category.  So the judge keeps going until he or she gets to the

4    criminal history category that the judge found to be

5    appropriate.  And where the judge's finger finally stops on

6    this chart, well, that is the range that, in the view of the

7    commission, would be appropriate, and it is set forth in terms

8    of months, okay?

9        So do you have any questions about this book?

10    THE DEFENDANT:  No.

11    THE COURT:  I should point out this book is advisory.

12    It is not mandatory.  I don't have to follow this book.  I am

13    free to sentence above or below the range in this book.  But I

14    do have to consider this book and I do have to make my findings

15    under it.  I have to announce what I found the offense level to

16    be, what I found the criminal history category to be, and what

17    the range is.  But then I am free to sentence above or below.

18        And then, finally, the last factor that the judge is

19    asked to consider and balance along with all of those others I

20    mentioned is what's sometimes referred to as the need to avoid

21    unwarranted sentencing disparities between similarly situated

22    people, which is a mouthful.  What it means basically is this:

23    Before imposing a sentence in a particular case, the judge is

24    asked to take a step back and make sure that the sentence in

25    that particular case is roughly consistent with other cases all

xg662recP kjc

SEALED - DO NOT DOCKET

1   over the country that involve similar defendants and similar

2   crimes.  Recognizing no two people are exactly alike, no two

3   cases are exactly alike, but where there really are strong

4   similarities, it is important that the sentences be similar.

5   Because if they were all over the place, then it would seem

6   arbitrary and it would probably undermine people's respect for

7   the law, and one of the objectives of this entire sentencing

8   approach is to promote respect for the law.  So that's the last

9   factor that the judge will consider.  Is there rough

10  consistency with the sentence contemplated here as compared to

11  other sentences in similar cases?

12        So sentencing is more art than science, I will say

13  that.  It is not something that you can plug into a computer.

14  This book sort of runs more like a computer, probably more like

15  an abacus, probably, but the actual sentencing process is a

16  little more nuanced and, frankly, tricky because it requires

17  balancing all of these different factors, some of which may

18  argue in favor of a lenient sentence, some more in favor of a

19  more harsh sentence.

20        So that is the process.  Do you have any questions

21  about that process?

22        THE DEFENDANT:  I do not.

23        THE COURT:  You should understand that if the sentence

24  you receive at the end of this whole thing is higher than what

25  you had hoped for, it is higher than what you expected, you

xg662recP kjc

SEALED - DO NOT DOCKET

1   won't have the right to withdraw your guilty plea at that

2   point.  Do you understand that?

3          THE DEFENDANT:  Yes, I understand.

4          THE COURT:  I said we haven't yet crossed the point of

5   no return, but we are pretty darn close.  Once you have pled

6   guilty here today, if you basically wait around until

7   sentencing and then say, wow, that judge was a nut, he

8   sentenced me to something I never imagined, that's crazy, I

9   want my plea back, I want to back to June 6 and start over,

10  that train will have left the station a long time.  You won't

11  be able to do that.

12          Do you understand?

13          THE DEFENDANT:  I understand.

14          THE COURT:  You might still have a right to appeal,

15  and you certainly would have the right to your opinion that the

16  sentence was too high, but you wouldn't have the right to

17  withdraw your guilty plea.

18          Understood?

19          THE DEFENDANT:  I understand.

20          THE COURT:  I understand that there is a plea

21  agreement between the parties.  I think I got a draft version

22  of this.

23          Do you have the original there?  Sometimes there are

24  multiple originals floating around.

25          MS. BIRGER:  We have one original; Mr. Capone has

xg662recP kjc

SEALED - DO NOT DOCKET

1    several.

2           THE COURT:  Mr. Capone, why don't you give one back.

3    I am going to have that one marked as a court exhibit.  I know

4    Ms. Birger and Mr. Levine want to keep one for themselves.  So

5    just give me one.

6           I am going to have the witness identify this as his

7    signature.  I will then mark that as a court exhibit.

8           So the document that I saw is dated June 3.  It is a

9    five-page, single-spaced letter from assistant United States

10   attorneys Bell, Capone, and Nawaday, and their chief, Daniel

11   Stein, and it is addressed to Mr. Levine and Ms. Birger.

12          Is that what you have in front of you there?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Have you read that document before today?

15          THE DEFENDANT:  Yes.

16          THE COURT:  If you go to the last page, again, there

17   is a signature line.  Is that your signature at the bottom?

18          THE DEFENDANT:  Yes.

19          THE COURT:  I guess second from the bottom.

20          And you signed that today?

21          THE DEFENDANT:  Yes.

22          THE COURT:  But before you signed it, you read the

23   document and discussed it with your attorneys?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you have any questions about what's in

xg662recP kjc

SEALED - DO NOT DOCKET

1    this document?

2            THE DEFENDANT:  I do not.

3            THE COURT:  Mr. Levine and Ms. Birger, that's your

4    signature as well?

5            MS. BIRGER:  Yes, your Honor.

6            MR. LEVINE:  Yes, your Honor.

7            THE COURT:  I presume that you read and reviewed with

8    your client this agreement and you were able to answer any

9    questions that you had before he signed it?

10           MS. BIRGER:  We did, your Honor.

11           THE COURT:  If you could hand that one back up, I will

12   mark that as a court exhibit.  I will mark it as Court Exhibit

13   B.  I will date and initial it.  I usually give this one back

14   to the government, but it is a court exhibit and if there is

15   ever any question as to what agreement we were talking about,

16   it's the one that's got my initials on it.  Okay?

17           I am not going to go over this in tremendous detail,

18   Mr. Rechnitz, but there are a couple of features of this

19   agreement I want to make sure you understand.

20           First, this is an agreement between you and the

21   government.  Do you understand that?

22           THE DEFENDANT:  Yes.

23           THE COURT:  You have certain obligations under this

24   agreement and so does the government.  Do you understand that?

25           THE DEFENDANT:  Yes.

SOUTHERN DISTRICT REPORTERS, P.C.<br>(212) 805-0300

xg662recP kjc

SEALED - DO NOT DOCKET

1    THE COURT:  But I don't have any obligations under

2 this agreement.  I didn't sign it, I didn't negotiate it, and I

3 am not bound by it.

4        Do you understand that?

5        THE DEFENDANT:  Yes.

6        THE COURT:  So it is at least conceivable that there

7 will be things in this letter agreement that you all agree on,

8 you stipulate to, but which I find are not right, not accurate,

9 or I disagree.

10       Do you understand that?

11       THE DEFENDANT:  Yes.

12       THE COURT:  If that's the case, I have to follow my

13 own judgment.  I don't just go along because the parties

14 agreed.

15       Do you understand that?

16       THE DEFENDANT:  Yes.

17       THE COURT:  An important feature of this agreement is

18 that it is a cooperation agreement.  It provides that you will

19 provide truthful information to the government, you will meet

20 with them when requested, that you will testify truthfully as

21 requested, and that you will provide any other information or

22 evidence that they ask for.

23       Do you understand that?

24       THE DEFENDANT:  Yes.

25       THE COURT:  You also agree under this letter agreement

xg662recP kjc

SEALED - DO NOT DOCKET

1   that you will not commit any further crimes.  You agree to some

2   other things as well.

3         If you do all of those things, the government agrees

4   that if your cooperation is substantial and it leads to

5   significant assistance in the investigation and prosecution of

6   other people, well, then, they agree that they will make a

7   motion at the time of sentencing under section 5K1.1 of the

8   sentencing guidelines, and that will allow me to sentence you

9   below the guidelines and sort of I would be authorized to give

10  you credit for your cooperation.  I am allowed to go below the

11  guidelines anyway because they are no longer mandatory, but

12  this 5K letter will allow me to sentence even lower than that,

13  than I might otherwise be inclined to do in light of your

14  cooperation.

15        Do you understand that?

16        THE DEFENDANT:  I do.

17        THE COURT:  It is always the government's call as to

18  whether your cooperation was substantial.  That will be up to

19  them.  If they decide close, but no cigar, I'm not in a

20  position to second guess them.

21        Do you understand that?

22        THE DEFENDANT:  Yes.

23        THE COURT:  If they act in bad faith, then I might.

24  But if it is just that everybody agrees you tried your best, it

25  just wasn't enough, then that will be a basis not to write you

xg662recP kjc

SEALED - DO NOT DOCKET

1    a 5K and that would not be a basis on which I could sentence

2    you below the guidelines.

3              Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  I might consider other arguments, but

6    that's one that wouldn't be available to me.

7              Do you have any questions about any of that?

8              THE DEFENDANT:  I do not.

9              THE COURT:  This agreement that you have signed that I

10   have marked as Court Exhibit B, does this constitute the entire

11   agreement that you have with the government?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Are there any other agreements beside this

14   one that exist between you and the government?

15             THE DEFENDANT:  No.

16             THE COURT:  Has anything been left out of this

17   agreement?

18             THE DEFENDANT:  No.

19             THE COURT:  Has anybody offered you anything of value

20   or threatened you in any way in exchange for pleading guilty

21   here today or signing this agreement?

22             THE DEFENDANT:  No.

23             THE COURT:  Ms. Birger, are you aware of any defense

24   that would prevail as a matter of law or any other reason why I

25   should not accept a guilty plea from Mr. Rechnitz today?

xg662recP kjc

1       MS. BIRGER:  No, your Honor.

2       THE COURT:  Mr. Capone, is there anything else you

3   would like me to ask about this agreement?

4       MR. CAPONE:  No, your Honor.  Thank you.

5       THE COURT:  At this point, then, Mr. Rechnitz, I am

6   going to ask you to tell me in your own words what it is you

7   did that makes you guilty of this crime, the crime charged in

8   the information.

9       THE DEFENDANT:  First of all, thank you for explaining

10  everything so clearly to me, your Honor.

11      THE COURT:  Sometimes I wonder if it helps or if

12  everyone is, like, let's get on with the show.

13      THE DEFENDANT:  It helps.  It definitely helps.

14      THE COURT:  This is probably the only time you have

15  done this, right?

16      THE DEFENDANT:  Yes.

17      THE COURT:  The lawyers and I do this for a living,

18  but you are the focus, so I want to make sure you understand

19  everything.

20      THE DEFENDANT:  Okay.  Thank you.

21      Several years ago, I became friendly with an

22  individual who knew a lot of New York police officers.  Over

23  time, through that individual, I got to know a number of police

24  officers and a senior official at the Correction Officers'

25  Benevolent Association.  I bestowed gifts on many of these

xg662recP kjc

SEALED - DO NOT DOCKET

1    police officers and the COBA official, including paying for

2    expensive meals and trips.

3         I also agreed with that same friend to make

4    contributions and to arrange for contributions by others to

5    political campaigns.

6         I expected, based on an implicit understanding, that

7    if I requested a favor or assistance from any of those officers

8    or beneficiaries of my political contributions, that I would

9    receive favorable treatment for myself and others, including

10   actions, such as parking placards, police escorts, assistance

11   in obtaining a gun license, and police assistance in resolving

12   private disputes, as a result of my gifts and contributions.  I

13   also understood that my friend, who had introduced me to many

14   of the individuals, was requesting and receiving certain

15   benefits from the officers and political officials in exchange

16   for the personal and financial benefits that I was providing.

17   With respect to political contributions, I expected for my

18   conversations with the fundraiser that I would receive

19   favorable municipal treatment.

20

21

22

23         In addition, in approximately late 2013 and early

24   2014, I introduced an official of a hedge fund to the COBA

25   official.  The COBA official arranged for COBA to invest union

xg662recP kjc

SEALED - DO NOT DOCKET

1    funds in the hedge fund in exchange for a payment to be made by

2    the hedge fund official to that senior COBA official.  I knew

3    about their agreement for the side payment and I knew that the

4    side payment was not disclosed to others at COBA.  I

5    subsequently facilitated the payment to the senior official at

6    COBA on behalf of the hedge fund official by personally

7    delivering a cash payment to the COBA official in Manhattan.  I

8    was reimbursed by the hedge fund official.

9             In furtherance of these actions and agreements with

10   others, I sent and received numerous e-mails and telephone

11   calls.

12             THE COURT:  Okay.  You were reading a statement,

13   correct?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Nothing unusual about that.  That's okay.

16   And I assume your lawyers assisted you in preparing that

17   statement, which there is nothing wrong with that either.  But

18   I want to make sure that this is your statement.  And so did

19   you prepare this statement with assistance?

20             THE DEFENDANT:  I did.

21             THE COURT:  But it's your statement?

22             THE DEFENDANT:  I did.  It is my statement.

23             THE COURT:  And you adopt it as your own?  In other

24   words, you are just not reading something that somebody sort of

25   stuck under your nose, correct?

xg662recP kjc

SEALED - DO NOT DOCKET

1      THE DEFENDANT:  Correct.  It is my statement, my

2   words.

3      THE COURT:  Everything you have said in that statement

4   is the truth, correct?

5      THE DEFENDANT:  Yes.

6      THE COURT:  Where did all of this take place?  In

7   Manhattan or other parts of the city?

8      THE DEFENDANT:  Manhattan and elsewhere.

9      THE COURT:  Manhattan and elsewhere.  All right.  And

10   over what period of time did this go on?

11      THE DEFENDANT:  It started in 2011 until 2015, in or

12   about.

13      THE COURT:  Mr. Capone, is that a satisfactory

14   allocution to your mind?

15      MR. CAPONE:  Yes, your Honor.

16      THE COURT:  And, Ms. Birger, do you agree?

17      MS. BIRGER:  Yes, your Honor.

18      THE COURT:  Okay.  I think so, too.

19      Look, the purpose of the allocution is to make sure

20   that there is a basis from which to find each of the elements

21   have been established, and I think what you just read does

22   that.  So at the time of sentencing there might be a lot more

23   flesh put on those bones and a lot more information available

24   to the sentencing judge, but for today's purposes, I think

25   that's sufficient.  So I will accept your guilty plea on that

xg662recP kjc

SEALED - DO NOT DOCKET

1     count.

2          Before I do that, though, I will give the government

3     an opportunity to summarize the evidence the government would

4     introduce or offer if the case went to trial.   Listen to

5     Mr. Capone as he summarizes this evidence.   When he is

6     finished, if you disagree with anything he has said or if you

7     would like to qualify anything he has said, I will give you a

8     chance to do that or I will give you a chance to talk to your

9     lawyers and they can voice their objections if they would like,

10    okay?

11         THE DEFENDANT:   Okay.

12         THE COURT:   Mr. Capone.

13         MR. CAPONE:   Thank you, your Honor.

14         If the case were to go to trial, the government would

15    principally introduce evidence obtained from wiretaps on

16    telephones used by the defendant, by the defendant's friend

17    that he referred to, as well as on another individual; numerous

18    e-mail records of the defendant, the defendant's friend, and

19    others involved in the offense; records from the New York City

20    Police Department, from the Correction Officers' Benevolent

21    Association, and from the hedge fund that was referred to; as

22    well as the testimony of numerous law enforcement witnesses and

23    police witnesses.

24         The evidence would also establish, as to the e-mails

25    that the defendant referred to, based on the existence of

xg662recP kjc

SEALED - DO NOT DOCKET

1   servers, that those e-mails crossed state lines in furtherance

2   of the scheme to defraud.

3        THE COURT:  Thank you, Mr. Capone.

4        (Defendant and defense counsel confer)

5        THE COURT:  Do you need a minute?

6        THE DEFENDANT:  I'm okay.

7        THE COURT:  You are sure?

8        THE DEFENDANT:  Yes.

9        THE COURT:  You heard what Mr. Capone said.  Do you

10  disagree with anything he has said?

11       THE DEFENDANT:  No, I do not.

12       THE COURT:  Let me now ask you to stand, Mr. Rechnitz.

13       Mr. Rechnitz, how do you now plead to Count One of the

14  information?  Guilty or not guilty.

15       THE DEFENDANT:  Guilty, your Honor.

16       THE COURT:  Did you do the things you are charged with

17  doing in this information?

18       THE DEFENDANT:  Yes, I did.

19       THE COURT:  Are you pleading guilty because you are

20  guilty?

21       THE DEFENDANT:  Yes.

22       THE COURT:  Are you pleading guilty voluntarily and of

23  your own free will?

24       THE DEFENDANT:  Yes.

25       THE COURT:  Mr. Rechnitz, because you acknowledge that

xg662recP kjc

SEALED - DO NOT DOCKET

1   you are guilty as charged in the information, because you know

2   your rights and you have waived those rights, because your plea

3   is entered knowingly and voluntarily and is supported by an

4   independent basis in fact for each of the elements that we

5   discussed earlier, I accept your guilty plea and I adjudge you

6   guilty on Count One of the information.

7            Okay.  So have a seat.

8            There are a couple of things we need to talk about

9   now, one of which is bail, the other of which I guess is a

10  sentencing date.  Let's talk about the sentencing date first,

11  even though the pretrial officer has been waiting a long time.

12           It seems to me we are probably going to be setting a

13  control date for sentencing, is that right?

14           MR. CAPONE:  Yes, your Honor.

15           THE COURT:  Let me ask the government to submit to me

16  a status letter in 60 days, cc'ing defense counsel, apprising

17  the court as to the state of the cooperation and whether, in

18  the government's view, we are in a position to schedule a

19  sentencing date, okay?  I am going to ask you to do this every

20  60 days.  Okay?

21           MR. CAPONE:  No problem, your Honor.

22           THE COURT:  Unless you think we are talking about such

23  a long period of time that we should do 90 days.

24           MR. CAPONE:  I think we are probably talking about

25  several months, so 90 days would --

xg662recP kjc

SEALED - DO NOT DOCKET

1        THE COURT:  Let's say 90 days then.  90 days, the

2    first of which puts us at September, is that right?

3        (Pause)

4        THE COURT:  September 6 status letter from the

5    government cc'ing counsel as to the status of defendant's

6    cooperation and whether we can schedule a sentencing date in

7    the government's view.  All right.  That can be submitted under

8    seal.

9        I have already found that this proceeding and all of

10   the files associated with it are properly sealed in light of

11   the government's ongoing investigation.  It seems to me the

12   presumption of open records which normally applies has been

13   rebutted and overcome, but I will ask the government to address

14   the need for sealing or continued sealing in its status letters

15   beginning in September, okay?  So address that.  *U.S. v. Amadeo*

16   is kind of the touchstone, so address that if you are going to

17   ask for more time.

18       MR. CAPONE:  Your Honor, the order previously entered

19   says to update you in 30 days on that.  Do you want us to just

20   wait until --

21       THE COURT:  I think 90 days.  If circumstances change

22   that it is clear we no longer need to do this, then let me know

23   right away, but let's amend that to make it 90 days, a status

24   letter in 90 days about cooperation and sentencing and the need

25   for continued sealing.  I think let's just get this all on one

xg662recP kjc
SEALED - DO NOT DOCKET

1    track, okay?

2                MR. CAPONE:  Thank you, your Honor.

3                THE COURT:  All right.

4                So let me tell you this.  One other thing about

5    sentencing, Mr. Rechnitz.  What I would normally be doing now,

6    if you weren't cooperating, if it wasn't such a long-term

7    thing, I would be setting a sentencing date, which probably

8    would be three or four months out from today.  That would allow

9    the probation department to prepare a report which is called a

10   presentence report.  That report is lengthy, maybe 30, 40,

11   single-spaced pages.  It provides a lot more information than

12   what we have covered today, a lot more information about you as

13   a person and a lot more information about the crime that's been

14   discussed very broadly today.  All of that is obviously

15   relevant to what would be an appropriate sentence, so I will

16   rely upon that report quite a bit.

17               The way the probation department collects that

18   information and prepares that report is by interviewing people.

19   So they will interview the agents who worked on the case.  They

20   will interview people who know you, including family members

21   and friends and employers and coworkers and things like that.

22   They will review public documents as well.  That's how all of

23   this gets put together.  Probation will also come and interview

24   you.

25               I am not going to order that interview, I am not going

SEALED - DO NOT DOCKET

1  to order the report even be prepared until I have set a

2  sentencing date.  But once I have set a sentencing date, then

3  probation will start collecting information and arranging to

4  schedule interviews.  Yours will be among them.

5       Ms. Birger, Mr. Levine, I assume you want to be

6  present for any interviews?

7       MS. BIRGER:  Yes, your Honor.

8       THE COURT:  I will order no interview should take

9  place unless counsel is present.  But once that interview goes

10  forward, Mr. Rechnitz, I will expect you will be truthful and

11  accurate in all your answers to the probation officer.  The

12  probation officer, like the pretrial services officer, they

13  work for the court.  They are sitting today at the front table,

14  but they don't work for the government.  They work for the

15  court.  So treat them with the same respect that you treat me

16  with, and obviously be truthful and complete in all your

17  answers to pretrial and to probation, okay?

18       THE DEFENDANT:  Okay.

19       THE COURT:  Once that report is prepared, you will get

20  a copy.  You should read it carefully.  You should discuss it

21  with your attorneys.  If there is anything in that report that

22  you think is wrong, tell your lawyers.  They will then reach

23  out to the probation officer to say, hey, we disagree with

24  this, and this, and that.  The government will have the same

25  opportunity.

xg662recP kjc

SEALED - DO NOT DOCKET

1     The probation department will then issue a final

2     report, and that's the first one I will see.  You will get a

3     copy of that one as well.  You should read that one again

4     carefully, cover to cover.  Don't assume that it is unchanged

5     from the last one, the first draft.  Don't assume that the

6     objections that you had previously have been corrected.  Don't

7     assume anything.  Read it carefully.  If there is anything you

8     disagree with, tell your lawyers.

9          At that point, after the final, they will then make

10    objections to me.  If there are objections, I will resolve the

11    objections.  I will either have a mini trial perhaps with

12    witnesses or perhaps reviewing exhibits and documents or

13    perhaps we will just have argument with the lawyers to talk

14    about what the facts are and what inferences should be drawn

15    from the facts that are undisputed.  But either way I will

16    resolve that.

17         In addition to that presentence report, I will review

18    any other submissions that are made by the parties.  I expect

19    your lawyers will make a sentencing submission on your behalf,

20    which I obviously will read.  It will be their opportunity to

21    make arguments about what they think will be an appropriate

22    sentence in light of those different factors that I talked

23    about before.  The government will have the same opportunity.

24         In addition, if you or any of your friends or family

25    members would like to write to me before sentencing, that's

xg662recP kjc
SEALED - DO NOT DOCKET

1   perfectly fine.  I am happy to read those letters.  They can be

2   really helpful.  I don't know you well.  I don't know

3   defendants typically that well.  A lot of people know them

4   better than I do.  So letters from a defendant or letters from

5   a defendant's family or friends or coworkers can be very

6   valuable insights into the character of a person.  The

7   probation report will touch on some of that because probation

8   does a very thorough job and they will talk to a lot of people

9   and they will summarize what those other folks said, but if you

10   or anybody else would like to write me, that's perfectly fine.

11   I promise I will read that stuff.

12          The only thing I will ask is that you have all of

13   those letters go to your lawyers.  Your lawyers will collect

14   them all, attach them to their submission, and send them to me.

15   That way I will be confident nothing has slipped through the

16   cracks.  If everyone is sending me letters, there are more

17   opportunities for things to get lost in transit.  Okay?

18          THE DEFENDANT:  Okay.

19          THE COURT:  On the day of sentencing, whenever that

20   is, we will come back in here.  At that point I will review

21   with you everything that I have received and reviewed so that

22   you can say, hey, you forgot a letter or you forgot something;

23   and then I will have a chance to say, oh, no, I have it, you

24   are right, I just neglected to mention it, or whatever it is.

25          I will then resolve any objections if there are any to

SEALED - DO NOT DOCKET

1    the presentence report.  I will then make my findings under the

2    guidelines.  I will then hear from the attorneys.  I will give

3    them a chance to discuss the other factors and the key facts

4    and arguments that they think appropriate.

5         Once they finish, I may ask them a few questions or

6    two, and then after all of that, I will give you an opportunity

7    to speak if you would like.  You are not required to speak, but

8    you would have a right to speak and you would be very welcome

9    to, so I will give you that chance.

10        Then after all of that, then I will tell you the

11   sentence that I intend to impose, I will explain my reasons for

12   it, I will check with the lawyers to make sure I haven't done

13   something illegal or improper and, assuming not, then I will

14   formally impose sentence at that point.

15        That's the process.  It takes a little bit of time and

16   it sounds like we have got a lot of other things going on in

17   between, so it might be a while before you come forward for

18   sentencing, but that's the basic sequence of events, okay?

19        Any questions about any of that?

20        THE DEFENDANT:  No.

21        THE COURT:  Let's talk about bail.  I have received,

22   prior to today's conference, a report from the Pretrial

23   Services officer.  Let me just get it in front of me.  It is a

24   five-page, single-spaced report from Ms. Rosado, who is here

25   today.  The recommendation is that I grant bail, basically

xg662recP kjc

SEALED - DO NOT DOCKET

1    release on a bond with some cosigners and some property and

2    surrender of travel documents.  That's the just of it?

3              MS. ROSADO:  Yes, it is.

4              THE COURT:  Counsel, have you seen a copy of the

5    Pretrial Services report?

6              MR. CAPONE:  Yes, your Honor.

7              THE COURT:  Is there any objection to it?

8              MR. CAPONE:  In terms of?

9              THE COURT:  Anything in it, any of the facts or any of

10   the recommendations?

11             MR. CAPONE:  Not to the facts.  The parties had

12   discussed a package that is slightly different from what's

13   proposed.

14             THE COURT:  Let's hear it.

15             MR. CAPONE:  The differences would be -- well, we

16   agreed to a $500,000 bond that would be fully secured by cash

17   or property.

18             THE COURT:  By when?

19             MR. CAPONE:  Within, I think, two weeks?

20             MS. BIRGER:  Two weeks.

21             MR. CAPONE:  Two weeks, your Honor, to be signed by

22   the defendant.  The pretrial report does recommend one

23   cosigner.

24             The only other difference is that we had agreed to

25   travel within the United States.  The pretrial report limits it

xg662recP kjc

SEALED - DO NOT DOCKET

1   to the Southern and Eastern Districts of New York and

2   California, as well as points in between for travel.

3              THE COURT:  So the government has no objection to

4   basically travel throughout the United States?

5              MR. CAPONE:  That is right, your Honor.

6              THE COURT:  Without approval or prior permission from

7   pretrial?

8              MR. CAPONE:  Yes, your Honor, and I think -- yes.

9   Ms. Birger can probably address this, but I think Mr. Rechnitz

10  does travel frequently for work, and there could be many, many

11  requests if we went that route.

12             THE COURT:  Surrender of travel documents?

13             MR. CAPONE:  Yes, your Honor.

14             THE COURT:  And no applications for new documents.

15  Okay.

16             Ms. Rosado, are you okay with that change?

17             MS. ROSADO:  Yes, your Honor.

18             THE COURT:  There was some discussion about firearms

19  and firearms licenses.  Do I need to make that a condition of

20  bail?

21             MR. CAPONE:  As far as I know he does not have

22  presently a license for any firearms.  So it is fine.  It

23  probably makes sense to include not obtaining any firearms.

24             THE COURT:  Okay, so no firearms, okay?  Mr. Rechnitz,

25  you are not looking to get any firearms between now and

SOUTHERN DISTRICT REPORTERS, P.C.<br>(212) 805-0300

xg662recP kjc

SEALED - DO NOT DOCKET

1    sentencing, are you?

2              THE DEFENDANT:  No.

3              THE COURT:  Good.

4              Ms. Birger, that's acceptable to you?

5              MS. BIRGER:  Your Honor, I couldn't quite hear what

6    Mr. Capone said.  The pretrial report recommended one cosigner,

7    and the parties' package does not have any cosigners.  I wanted

8    to make sure that that was clear.  I thought perhaps it wasn't.

9              THE COURT:  No, it wasn't clear to me.  So you are

10   saying a financially responsible person as a cosigner or no

11   cosigners?

12             MR. CAPONE:  No cosigners, just the defendant, as well

13   as the fully secured bond.

14             THE COURT:  If it is fully secured, then there is less

15   need for a cosigner, other than for moral suasion purposes.

16             MR. CAPONE:  Exactly, your Honor, and I think both

17   parties agree that that is not necessary here.

18             THE COURT:  Okay.  And, Ms. Rosado, are you okay with

19   that?

20             MS. ROSADO:  Yes, your Honor.

21             THE COURT:  Given the circumstances, I don't think

22   that Mr. Rechnitz is a flight risk, I don't think he is a

23   danger, so I think bail on these conditions is appropriate.  So

24   I am prepared to grant bail on those conditions.

25             MS. BIRGER:  Two small things with respect to that,

xg662recP kjc

                    SEALED - DO NOT DOCKET

1    your Honor.

2                One is, we had discussed with the government, and I

3    believe there is no objection, given the need for sealing here

4    and some of the sensitivities, that any pretrial reporting be

5    by telephone, if that's acceptable to Pretrial Services.

6                THE COURT:  Okay.  Ms. Rosado, are you okay with that?

7                MS. ROSADO:  Your Honor, we weren't asking for

8    supervision, so that's fine.

9                THE COURT:  So not even telephone?

10               MS. BIRGER:  Even better, your Honor.

11               THE COURT:  Look.  I assume Mr. Rechnitz is going to

12   be in touch with law enforcement agents and with the

13   government, so I assume that if he is not abiding by these

14   conditions, they are going to tell me about it.  I have every

15   reason to think that he is going to comply with these

16   conditions, and so I think that's fine.  So I won't even need

17   pretrial supervision.  But I guess I will ask the government in

18   its periodic reports to just tell me how Mr. Rechnitz is doing

19   in terms of abiding by the conditions of bail, since you will

20   be in a better position than I to determine whether he is doing

21   just that.  Okay?

22               MR. CAPONE:  Yes, your Honor.

23               THE COURT:  Let's have all those conditions met by the

24   20th of June, okay?  So the bond will be signed when?  Today or

25   by the 20th?

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

xg662recP kjc

SEALED - DO NOT DOCKET

1    MR. CAPONE:  Today, your Honor, but if the court will

2  allow us to stay in the courtroom and have the folks from 500

3  Pearl bring the bond here for Mr. Rechnitz to sign, that would

4  be great, because having him hang out over there would defeat

5  the purpose.

6    THE COURT:  Have you contacted them --

7    MR. CAPONE:  Yes.

8    THE COURT:  -- to know that's in the cards?

9    MR. CAPONE:  Yes.  I spoke to Danny Ortiz this

10  morning.  I am happy to walk over the conditions, and they will

11  prepare the bond and bring it back over here.

12    THE COURT:  All right.  I guess we will have to

13  prepare an order that makes clear what the conditions are, so

14  we will pound that out.  Maybe you can just tell him to come

15  over?  He needs to type it out before he comes, is that the

16  plan?

17    MR. CAPONE:  Yes, your Honor.

18    THE COURT:  You can tell him, I guess, by the phone.

19  We will pound out an order that just reflects what we just

20  talked about.  Okay?

21    Is there anything else we should cover today?

22    MS. BIRGER:  One more thing your Honor, a travel

23  request already.  Mr. Rechnitz is scheduled to go to a family

24  wedding in Toronto, Canada, in just a couple of weeks.  He is

25  supposed to fly on June 20 and to return around June 22.  I

SEALED - DO NOT DOCKET

1   believe the government has no objection, but I wanted to make

2   the application that he be permitted that international travel

3   in two weeks.

4           THE COURT:  Okay.  So otherwise international travel

5   is not part of his bail conditions; but, with this exception, I

6   will allow it, and then future requests for international

7   travel would have to come to the court, right?  That's the

8   plan?

9           MR. CAPONE:  Yes, your Honor.  And actually, now that

10  I am thinking of it, if there is no Pretrial Services

11  supervision, it might make sense, given that Mr. Rechnitz will

12  be in touch with agents, for the F.B.I. to maintain his

13  passport.

14          THE COURT:  Okay.  So I will ask Mr. Rechnitz to turn

15  over the passport to the agents, okay, the F.B.I. agents.  I

16  will allow the trip to Canada.  Any other foreign travel will

17  have to be approved in advance by me, so tell your lawyers if

18  you have got other trips that you really need to do, and then

19  they will tee it up for me and probably talk to the government

20  to see if they are on board or not.  Okay?

21          THE DEFENDANT:  Okay.  Thank you.

22          MS. BIRGER:  Thank you, your Honor.

23          THE COURT:  Mr. Capone, anything else we should cover

24  today?

25          MR. CAPONE:  No, your Honor.  Thank you.

65

xg662recP kjc

SEALED - DO NOT DOCKET

1          THE COURT:  All right.

2          So, Mr. Rechnitz, you know, I don't know when I will

3    see you again.  Obviously take these conditions of bail very,

4    very seriously.  If at any point between now and sentencing you

5    think you need to see me for whatever reason, tell your

6    lawyers, and we will set something up, okay?  I don't want you

7    to think I have forgotten about you, but it's just that the

8    nature of your relationship going forward with the government

9    means that this could take a while.  They really will be

10   maintaining a relationship with you, and I will be waiting for

11   them to tell me that we are ready to get back on track, okay?

12         THE DEFENDANT:  Okay.

13         THE COURT:  All right.  Good luck to you.

14         THE DEFENDANT:  Thank you.

15         THE COURT:  Thanks.

16         Let me thank the court reporter, as always, for her

17   time and talents.  I am going to order, if it's not already

18   clear, that this transcript remains sealed, available only to

19   counsel of record, and the entire docket is going to remain

20   sealed as well.

21         Okay.  Thanks.

22                              -  -  -

23

24

25



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 20, 2016

**REQUST TO BE FILED**
**UNDER SEAL**

**BY EMAIL**
The Honorable Richard J. Sullivan
United States District Judge
United States District Court for the
    Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    **United States v. Jona Rechnitz, 16 Cr. 389 (RJS)**

Dear Judge Sullivan:

On or about July 13, 2016, this Court issued an order directing the Government and counsel for the defendant, Jona Rechnitz, to submit under seal a letter explaining the need for the continued sealing of this matter in light of recent events and public reporting on the defendant's cooperation (the "July 13 Order").[1]  The Government respectfully submits this letter in response to the July 13 Order.

BACKGROUND

On or about June 6, 2016, the defendant pled guilty before Your Honor to a conspiracy to commit honest services fraud, in violation of Title 18, United States Code, Section 1349,

---

[1] On or about June 22, 2016, Janon Fisher, on behalf of online publication DNAinfo New York, submitted a letter to the Court seeking disclosure of information relating to what the letter characterized as a sealed matter involving the plea of a cooperating witness (the "DNAinfo Letter").  On or about June 24, 2016, the Honorable P. Kevin Castel, presiding as Part 1 Judge, directed the Government to submit a response to the DNAinfo Letter that "need not, in the first instance, confirm the existence of any matter that is under seal, but should address the lawfulness of its practices in obtaining sealing and delayed docketing orders and the scope of any right of public access thereto" (the "June 24 Order").  The Government submitted a response on or about July 1, 2016, to the Honorable Andrew L. Carter, presiding as Part 1 Judge, and DNAinfo submitted a reply on or about July 8, 2016.  That matter was subsequently assigned to the Honorable Ronnie Abrams, presiding as Part 1 Judge, who then referred it to Your Honor.

pursuant to a cooperation agreement. In advance of the defendant's plea, upon application from the Government, the Court issued an order, dated June 3, 2016, directing that: (1) the Information and related paperwork in this matter be sealed until further order of the Court; (2) the courtroom shall be closed for the defendant's waiver and indictment and plea; (3) the transcript of the defendant's waiver of indictment and plea shall be sealed until further order of the Court; and (4) the docketing of the Information, related charging paperwork, the waiver of indictment and plea shall be delayed until further order of the Court (the "June 3 Order"). The Court concluded that sealing, delayed docketing, and closure of the courtroom was necessary because "active law enforcement investigations would be compromised if the government's application is not granted." (June 3 Order at 1.)

Since the defendant's plea in this case, the Government has charged several individuals based, in part, on the defendant's cooperation, and those cases are also pending in this Court. United States v. Seabrook, 16 Cr. 467 (ALC); United States v. Grant, et al., 16 Cr. 468 (GHW). In connection with those cases, there has been speculation in the press about the defendant's cooperation with the Government. To date, however, the Government has not referred to the defendant by name in any publicly filed document or otherwise.

ARGUMENT

The Government respectfully submits that continued sealing and delayed docketing in this case is necessary to protect ongoing investigations of additional uncharged targets and the safety of the defendant.

Although there is a qualified right of public access to court documents under the First Amendment and common law, the Second Circuit has recognized that documents may be filed and maintained under seal where an ongoing criminal investigation may be jeopardized or to protect a cooperating defendant's safety. See United States v. Cojab, 996 F.2d 1404, 1408 (2d Cir. 1993) ("we have recognized as additional sufficient reasons for closure and sealing those occasions where an ongoing government investigation may be jeopardized"); United States v. Haller, 837 F.2d 84, 88 (2d Cir. 1988) (affirming decision to seal that portion of a plea agreement that referred to a defendant's ongoing cooperation); Fed. R. Crim. P. 49.1(d) and (e) & advisory committee note (permitting a court to order filings to be made under seal, and explicitly listing, as examples, "motions for downward departure for substantial assistance" and "plea agreements indicating cooperation"). The Second Circuit also has recognized that docketing the applications to seal materials relating to a cooperating witness could be prejudicial, and in such cases the applications themselves and related notes to the docket could be sealed. See United States v. Alcantara, 396 F.3d 189, 200 n.8 (2d Cir. 2005).

As a general matter, and in accordance with established Second Circuit precedent, it is the Government's practice to request sealing of materials relating to cooperating witnesses when sealing is necessary to protect the witness's safety, to protect the integrity of ongoing law

enforcement efforts, and/or to protect the secrecy of sensitive matters affecting a criminal proceeding. See, e.g., Cojab, 996 F.2d at 1407-09; Haller, 837 F.2d at 88. In addition, where even notice of an application to seal such materials could alert other individuals to the existence of the cooperating witness, and thus put the witness's safety at risk or jeopardize ongoing investigations, it is the Government's practice to seek delayed docketing of entries relating to cooperating witnesses. See Cojab, 996 F.2d at 1408-09.

Here, the Government believes that continued sealing of court documents relating to the defendant and delayed docketing are both necessary to protect the integrity of ongoing criminal investigations and the defendant's safety. As noted above, in connection with the defendant's cooperation, he has provided the Government with detailed information concerning his criminal activities and those of his former associates. The Information and the defendant's plea both made reference (although not by name) to other participants in these crimes. Although two cases arising in part from the defendant's information have been indicted, the Government continues to investigate additional crimes and additional individuals. In particular, the Government is actively investigating two additional bribery schemes. First, the Government is actively investigating a fundraiser (the "Fundraiser") for an elected official in connection with promises of official acts made to donors to that elected official ("Elected Official-1"). This Fundraiser had many dealings and interactions with the defendant, including discussions regarding official actions that the Fundraiser would attempt to make happen as a result of the defendant's donations.

Rechnitz's cooperation against public officials – as opposed to the law enforcement officials and individuals involved with the Correction Officers Benevolent Association in the charged matters – is evident on the face of the sealed Information in this matter. Beyond that categorical difference, Rechnitz specifically discussed the Fundraiser and (although not by name) during his guilty plea allocution. Public disclosure of the limited materials that exist in this matter – the Information and the defendant's plea – could alert these individuals to the existence of the investigations, hindering law enforcement efforts to pursue those investigations. For instance, public disclosure of the defendant's cooperation could provide individuals under investigation an opportunity to obstruct the investigation by tampering with witnesses, destroying documents, or colluding with others involved, among other things.

Furthermore, should the defendant's identity and court documents be made public, the Government submits that there is a substantial risk to the safety of the defendant and his family. In this case, public reports speculating about the defendant's cooperation have already generated threats against him and his family. The defendant has received voicemails containing such threats. In one, an anonymous caller said "you scumbag, I know where you live, I know who you are, your family."

As noted above, several press reports have speculated about the identity of the defendant. However, a press report suggesting the identity of a cooperating witness "is not the functional equivalent of officially acknowledging the cooperating witness, let alone the information that the witness has provided." See, e.g., United States v. Smith, 985 F. Supp. 2d 506, 533 (S.D.N.Y. 2013). The Government has not officially acknowledged the identity of the defendant. As noted above, the defendant has already been threatened in connection with his cooperation with the Government. Public confirmation of the defendant's case and cooperation creates an even greater risk that these or other individuals who have singled the defendant out, at least for threats, will continue to target him, perhaps more aggressively, at great risk to the defendant and his family. Moreover, officially disclosing the name of the defendant would provide individuals under investigation an opportunity to engage in obstructive behavior as to the ongoing investigations by, among other things, harassing the defendant or other witnesses.

For the foregoing reasons, the Government respectfully requests that the defendant's Information, related charging paperwork, waiver of indictment and plea remain under seal, and that docketing of those materials be delayed until further order of this Court. Counsel for the defendant joins in this request.

Respectfully submitted,

PREET BHARARA
United States Attorney


By: _____/s/_____
Martin Bell / Russell Capone / Kan
Nawaday / Lauren Schorr
Assistant United States Attorneys
Southern District of New York
(212) 637-5361 / 2247 / 2311 / 2299



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 12, 2016

## REQUST TO BE FILED
## UNDER SEAL

### By Electronic Mail

The Honorable Richard J. Sullivan
United States District Judge
United States District Court for the
    Southern District of New York
500 Pearl Street
New York, New York 10007

### Re:    United States v. Jona Rechnitz, 16 Cr. 389 (RJS)

Dear Judge Sullivan:

The Government respectfully submits this letter to inform the Court of the need for continued sealing of the matters in this case. For the Court's reference, the Government attaches as Exhibit A, the Government's most recent submission on this matter dated July 20, 2016. (the "July 20 Letter").

For the reasons set forth below and in the July 20 Letter, the Government believes that continued sealing of court documents relating to the defendant and delayed docketing are both necessary to protect the integrity of ongoing criminal investigations and the defendant's safety.

*First*, the defendant's cooperation in uncharged cases is ongoing and in particular, the two criminal investigations of political figures described in the July 20 Letter of a fundraiser and two elected officials are ongoing and active. In brief, the Government continues to investigate a fundraiser (the "Fundraiser") for an elected official in connection with promises of official acts made to donors to that elected official ("Elected Official-1"). This Fundraiser had many dealings and interactions with the defendant, including discussions regarding official actions that the Fundraiser would attempt to make happen as a result of the defendant's donations.

█████████████████████████████████████████████████

Public disclosure of the limited materials that exist in this matter – the Information and the defendant's plea – could alert these individuals, as well as witnesses to the conduct being investigated, to the existence of the investigations and have adverse consequences. For one, charges have not yet been brought against █████████████

█████████ Thus, premature public disclosure of the defendant's cooperation *before* formal charges have been brought could have an effect on the interests of ██████████████

█████████████████ and also could hamper the Government's ability to continue to effectively investigate these cases. Moreover, public disclosure of the defendant's cooperation could provide individuals under investigation an opportunity to obstruct the investigation by tampering with witnesses, destroying documents, or colluding with others involved, among other things. *See United States* v. *Cojab*, 996 F.2d 1404, 1408 (2d Cir. 1993) ("we have recognized as additional sufficient reasons for closure and sealing those occasions where an ongoing government investigation may be jeopardized"); *United States* v. *Haller*, 837 F.2d 84, 88 (2d Cir. 1988) (affirming decision to seal that portion of a plea agreement that referred to a defendant's ongoing cooperation).

*Second*, the Government respectfully submits that continued sealing is necessary to ensure the continued safety of the defendant. Although the Government is unaware of any additional threats to the defendant since the submission of the July 20 Letter, official disclosure of the defendant's identity and cooperation would likely lead to renewed threats against him or his family. As noted in the July 20 Letter, press reports merely speculating about the defendant's cooperation resulted in the defendant receiving threatening voicemails. An official acknowledgement of the defendant's identity as a cooperator would inevitably create an even greater risk that individuals who have singled the defendant out, at least for threats, will continue to target him, perhaps more aggressively, at great risk to the defendant and his family. Moreover, officially disclosing the name of the defendant would provide individuals under investigation an opportunity to engage in obstructive behavior as to the ongoing investigations by, among other things, harassing the defendant or other witnesses.

*Third*, the sealing of this case would not be indefinite. The defendant may testify in a case pending before the Honorable Katherine B. Forrest in *United States* v. *Peralta*, 16 Cr. 354 (KBF), which is scheduled for trial on November 28, 2016 – the Government notes, however, that defense counsel has sought an adjournment of that trial date until May 2017. Further, the next pretrial conferences in the other two charged cases in which the defendant may testify -- *United States* v. *Grant, et al.*, 16 Cr. 468 (GHW) and *United States* v. *Seabrook, et al.*, 16 Cr. 467 (ALC), are scheduled for October 2016 and November 2016, respectively. No trial dates have been set in *Seabrook* and *Grant*. However, once the defendant's identity is officially disclosed as a witness in any of these cases, the necessity for continued sealing will have dissipated, and the Government will of course apprise the Court of any such change in circumstance affecting the need for continued sealing in this case.

2

For the foregoing reasons, the Government respectfully requests that the defendant's Information, related charging paperwork, waiver of indictment and plea remain under seal, and that docketing of those materials be delayed until further order of this Court.   Counsel for the defendant joins in this request.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:_____/s/_____
Martin Bell / Russell Capone / Kan M.
Nawaday / Lauren Schorr
Assistant United States Attorneys
Southern District of New York
(212) 637-5361 / 2247 / 2311 / 2299

Attch.

Cc:     Alan Levine, Esq.
        Laura Birger, Esq.
        Counsel for the Defendant
        (By electronic mail)

3

# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 20, 2016

**REQUST TO BE FILED**
**UNDER SEAL**

**BY EMAIL**
The Honorable Richard J. Sullivan
United States District Judge
United States District Court for the
   Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   <u>United States</u> v. <u>Jona Rechnitz</u>, 16 Cr. 389 (RJS)

Dear Judge Sullivan:

   On or about July 13, 2016, this Court issued an order directing the Government and counsel for the defendant, Jona Rechnitz, to submit under seal a letter explaining the need for the continued sealing of this matter in light of recent events and public reporting on the defendant's cooperation (the "July 13 Order").[1]  The Government respectfully submits this letter in response to the July 13 Order.

BACKGROUND

   On or about June 6, 2016, the defendant pled guilty before Your Honor to a conspiracy to commit honest services fraud, in violation of Title 18, United States Code, Section 1349,

---

[1] On or about June 22, 2016, Janon Fisher, on behalf of online publication DNAinfo New York, submitted a letter to the Court seeking disclosure of information relating to what the letter characterized as a sealed matter involving the plea of a cooperating witness (the "DNAinfo Letter").  On or about June 24, 2016, the Honorable P. Kevin Castel, presiding as Part 1 Judge, directed the Government to submit a response to the DNAinfo Letter that "need not, in the first instance, confirm the existence of any matter that is under seal, but should address the lawfulness of its practices in obtaining sealing and delayed docketing orders and the scope of any right of public access thereto" (the "June 24 Order").  The Government submitted a response on or about July 1, 2016, to the Honorable Andrew L. Carter, presiding as Part 1 Judge, and DNAinfo submitted a reply on or about July 8, 2016.  That matter was subsequently assigned to the Honorable Ronnie Abrams, presiding as Part 1 Judge, who then referred it to Your Honor.

pursuant to a cooperation agreement. In advance of the defendant's plea, upon application from the Government, the Court issued an order, dated June 3, 2016, directing that: (1) the Information and related paperwork in this matter be sealed until further order of the Court; (2) the courtroom shall be closed for the defendant's waiver and indictment and plea; (3) the transcript of the defendant's waiver of indictment and plea shall be sealed until further order of the Court; and (4) the docketing of the Information, related charging paperwork, the waiver of indictment and plea shall be delayed until further order of the Court (the "June 3 Order"). The Court concluded that sealing, delayed docketing, and closure of the courtroom was necessary because "active law enforcement investigations would be compromised if the government's application is not granted." (June 3 Order at 1.)

Since the defendant's plea in this case, the Government has charged several individuals based, in part, on the defendant's cooperation, and those cases are also pending in this Court. United States v. Seabrook, 16 Cr. 467 (ALC); United States v. Grant, et al., 16 Cr. 468 (GHW). In connection with those cases, there has been speculation in the press about the defendant's cooperation with the Government. To date, however, the Government has not referred to the defendant by name in any publicly filed document or otherwise.

ARGUMENT

The Government respectfully submits that continued sealing and delayed docketing in this case is necessary to protect ongoing investigations of additional uncharged targets and the safety of the defendant.

Although there is a qualified right of public access to court documents under the First Amendment and common law, the Second Circuit has recognized that documents may be filed and maintained under seal where an ongoing criminal investigation may be jeopardized or to protect a cooperating defendant's safety. See United States v. Cojab, 996 F.2d 1404, 1408 (2d Cir. 1993) ("we have recognized as additional sufficient reasons for closure and sealing those occasions where an ongoing government investigation may be jeopardized"); United States v. Haller, 837 F.2d 84, 88 (2d Cir. 1988) (affirming decision to seal that portion of a plea agreement that referred to a defendant's ongoing cooperation); Fed. R. Crim. P. 49.1(d) and (e) & advisory committee note (permitting a court to order filings to be made under seal, and explicitly listing, as examples, "motions for downward departure for substantial assistance" and "plea agreements indicating cooperation"). The Second Circuit also has recognized that docketing the applications to seal materials relating to a cooperating witness could be prejudicial, and in such cases the applications themselves and related notes to the docket could be sealed. See United States v. Alcantara, 396 F.3d 189, 200 n.8 (2d Cir. 2005).

As a general matter, and in accordance with established Second Circuit precedent, it is the Government's practice to request sealing of materials relating to cooperating witnesses when sealing is necessary to protect the witness's safety, to protect the integrity of ongoing law

enforcement efforts, and/or to protect the secrecy of sensitive matters affecting a criminal proceeding. See, e.g., Cojab, 996 F.2d at 1407-09; Haller, 837 F.2d at 88. In addition, where even notice of an application to seal such materials could alert other individuals to the existence of the cooperating witness, and thus put the witness's safety at risk or jeopardize ongoing investigations, it is the Government's practice to seek delayed docketing of entries relating to cooperating witnesses. See Cojab, 996 F.2d at 1408-09.

Here, the Government believes that continued sealing of court documents relating to the defendant and delayed docketing are both necessary to protect the integrity of ongoing criminal investigations and the defendant's safety. As noted above, in connection with the defendant's cooperation, he has provided the Government with detailed information concerning his criminal activities and those of his former associates. The Information and the defendant's plea both made reference (although not by name) to other participants in these crimes. Although two cases arising in part from the defendant's information have been indicted, the Government continues to investigate additional crimes and additional individuals. In particular, the Government is actively investigating two additional bribery schemes. First, the Government is actively investigating a fundraiser (the "Fundraiser") for an elected official in connection with promises of official acts made to donors to that elected official ("Elected Official-1"). This Fundraiser had many dealings and interactions with the defendant, including discussions regarding official actions that the Fundraiser would attempt to make happen as a result of the defendant's donations.

Rechnitz's cooperation against public officials – as opposed to the law enforcement officials and individuals involved with the Correction Officers Benevolent Association in the charged matters – is evident on the face of the sealed Information in this matter. Beyond that categorical difference, Rechnitz specifically discussed the Fundraiser and (although not by name) during his guilty plea allocution. Public disclosure of the limited materials that exist in this matter – the Information and the defendant's plea – could alert these individuals to the existence of the investigations, hindering law enforcement efforts to pursue those investigations. For instance, public disclosure of the defendant's cooperation could provide individuals under investigation an opportunity to obstruct the investigation by tampering with witnesses, destroying documents, or colluding with others involved, among other things.

Furthermore, should the defendant's identity and court documents be made public, the Government submits that there is a substantial risk to the safety of the defendant and his family. In this case, public reports speculating about the defendant's cooperation have already generated threats against him and his family. The defendant has received voicemails containing such threats. In one, an anonymous caller said "you scumbag, I know where you live, I know who you are, your family."

As noted above, several press reports have speculated about the identity of the defendant. However, a press report suggesting the identity of a cooperating witness "is not the functional equivalent of officially acknowledging the cooperating witness, let alone the information that the witness has provided." See, e.g., United States v. Smith, 985 F. Supp. 2d 506, 533 (S.D.N.Y. 2013). The Government has not officially acknowledged the identity of the defendant. As noted above, the defendant has already been threatened in connection with his cooperation with the Government. Public confirmation of the defendant's case and cooperation creates an even greater risk that these or other individuals who have singled the defendant out, at least for threats, will continue to target him, perhaps more aggressively, at great risk to the defendant and his family. Moreover, officially disclosing the name of the defendant would provide individuals under investigation an opportunity to engage in obstructive behavior as to the ongoing investigations by, among other things, harassing the defendant or other witnesses.

For the foregoing reasons, the Government respectfully requests that the defendant's Information, related charging paperwork, waiver of indictment and plea remain under seal, and that docketing of those materials be delayed until further order of this Court. Counsel for the defendant joins in this request.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:_____/s/_____
Martin Bell / Russell Capone / Kan
Nawaday / Lauren Schorr
Assistant United States Attorneys
Southern District of New York
(212) 637-5361 / 2247 / 2311 / 2299



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 6, 2016

## REQUEST TO BE FILED
## UNDER SEAL

### By Electronic Mail

The Honorable Richard J. Sullivan
United States District Judge
United States District Court for the
 Southern District of New York
500 Pearl Street
New York, New York 10007

### Re:    United States v. Jona Rechnitz, 16 Cr. 389 (RJS)

Dear Judge Sullivan:

The Government respectfully submits this letter to inform the Court of the need for continued sealing of the matters in this case. For the Court's reference, the Government attaches as Exhibit A, the Government's most recent submission on this matter dated September 12, 2016. (the "September 12 Letter").

The investigations described in the September 12 Letter are ongoing, and the Government believes that continued sealing of court documents relating to the defendant and delayed docketing both remain necessary to protect the integrity of ongoing criminal investigations and the defendant's safety.

*First*, the defendant's cooperation in the uncharged cases described in the Government's September 12 Letter of the persons described as the "Fundraiser, "Elected Official-1," and ▇▇▇▇▇▇▇▇▇ are ongoing. As noted in the Government's prior letters on this matter, public disclosure of the limited materials that exist in this matter – the Information and the defendant's plea – could alert these individuals, as well as witnesses to the conduct being investigated, to the existence of the investigations and have adverse consequences. For one, charges have not yet been brought against ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇ Thus, premature public disclosure of the defendant's cooperation *before* formal charges have been brought could have an effect on the interests of ▇▇▇▇▇▇▇▇▇▇▇▇

and also could hamper the Government's ability to continue to effectively investigate these cases. *See United States* v. *Cojab*, 996 F.2d 1404, 1408 (2d Cir. 1993) ("we have recognized as additional sufficient reasons for closure and sealing those occasions where an ongoing government investigation may be jeopardized"); *United States* v. *Haller*, 837 F.2d 84, 88 (2d Cir. 1988) (affirming decision to seal that portion of a plea agreement that referred to a defendant's ongoing cooperation).

*Second*, the Government respectfully submits that continued sealing is necessary to ensure the continued safety of the defendant. Although the Government is unaware of any additional threats to the defendant since the submission of the September 12 Letter, official disclosure of the defendant's identity and cooperation would likely lead to renewed threats against him or his family.

*Third*, the sealing of this case would not be indefinite. The defendant may testify in a case pending before the Honorable Katherine B. Forrest in *United States* v. *Peralta*, 16 Cr. 354 (KBF). Since the submission of the September 12 Letter, a trial date of May 15, 2017 has been set in that case. Further, the next pretrial conferences in the other two charged cases in which the defendant may testify -- *United States* v. *Grant, et al.*, 16 Cr. 468 (GHW) and *United States* v. *Seabrook, et al.*, 16 Cr. 467 (ALC), are scheduled for October 2016 and November 2016, respectively. No trial dates have been set in *Seabrook* and *Grant*. However, once the defendant's identity is officially disclosed as a witness in any of these cases, the necessity for continued sealing will have dissipated, and the Government will of course apprise the Court of any such change in circumstance affecting the need for continued sealing in this case.

For the foregoing reasons, the Government respectfully requests that the defendant's Information, related charging paperwork, waiver of indictment and plea remain under seal, and that docketing of those materials be delayed until further order of this Court. Counsel for the defendant joins in this request.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: Kan M. Nawaday

Martin Bell / Russell Capone / Kan M.
Nawaday / Lauren Schorr
Assistant United States Attorneys
Southern District of New York
(212) 637-5361 / 2247 / 2311 / 2299

Attch.

Cc:     Alan Levine, Esq.
        Laura Birger, Esq.
        Counsel for the Defendant
        (By electronic mail)

2

# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 12, 2016

## REQUST TO BE FILED
## UNDER SEAL

### By Electronic Mail

The Honorable Richard J. Sullivan
United States District Judge
United States District Court for the
    Southern District of New York
500 Pearl Street
New York, New York 10007

### Re: United States v. Jona Rechnitz, 16 Cr. 389 (RJS)

Dear Judge Sullivan:

The Government respectfully submits this letter to inform the Court of the need for continued sealing of the matters in this case. For the Court's reference, the Government attaches as Exhibit A, the Government's most recent submission on this matter dated July 20, 2016. (the "July 20 Letter").

For the reasons set forth below and in the July 20 Letter, the Government believes that continued sealing of court documents relating to the defendant and delayed docketing are both necessary to protect the integrity of ongoing criminal investigations and the defendant's safety.

*First*, the defendant's cooperation in uncharged cases is ongoing and in particular, the two criminal investigations of political figures described in the July 20 Letter of a fundraiser and two elected officials are ongoing and active. In brief, the Government continues to investigate a fundraiser (the "Fundraiser") for an elected official in connection with promises of official acts made to donors to that elected official ("Elected Official-1"). This Fundraiser had many dealings and interactions with the defendant, including discussions regarding official actions that the Fundraiser would attempt to make happen as a result of the defendant's donations.

Public disclosure of the limited materials that exist in this matter – the Information and the defendant's plea – could alert these individuals, as well as witnesses to the conduct being investigated, to the existence of the investigations and have adverse consequences. For one, charges have not yet been brought against
Thus, premature public disclosure of the defendant's cooperation *before* formal charges have been brought could have an effect on the interests of
and also could hamper the Government's ability to continue to effectively investigate these cases. Moreover, public disclosure of the defendant's cooperation could provide individuals under investigation an opportunity to obstruct the investigation by tampering with witnesses, destroying documents, or colluding with others involved, among other things. *See United States* v. *Cojab*, 996 F.2d 1404, 1408 (2d Cir. 1993) ("we have recognized as additional sufficient reasons for closure and sealing those occasions where an ongoing government investigation may be jeopardized"); *United States* v. *Haller*, 837 F.2d 84, 88 (2d Cir. 1988) (affirming decision to seal that portion of a plea agreement that referred to a defendant's ongoing cooperation).

*Second*, the Government respectfully submits that continued sealing is necessary to ensure the continued safety of the defendant. Although the Government is unaware of any additional threats to the defendant since the submission of the July 20 Letter, official disclosure of the defendant's identity and cooperation would likely lead to renewed threats against him or his family. As noted in the July 20 Letter, press reports merely speculating about the defendant's cooperation resulted in the defendant receiving threatening voicemails. An official acknowledgement of the defendant's identity as a cooperator would inevitably create an even greater risk that individuals who have singled the defendant out, at least for threats, will continue to target him, perhaps more aggressively, at great risk to the defendant and his family. Moreover, officially disclosing the name of the defendant would provide individuals under investigation an opportunity to engage in obstructive behavior as to the ongoing investigations by, among other things, harassing the defendant or other witnesses.

*Third*, the sealing of this case would not be indefinite. The defendant may testify in a case pending before the Honorable Katherine B. Forrest in *United States* v. *Peralta*, 16 Cr. 354 (KBF), which is scheduled for trial on November 28, 2016 – the Government notes, however, that defense counsel has sought an adjournment of that trial date until May 2017. Further, the next pretrial conferences in the other two charged cases in which the defendant may testify -- *United States* v. *Grant, et al.*, 16 Cr. 468 (GHW) and *United States* v. *Seabrook, et al.*, 16 Cr. 467 (ALC), are scheduled for October 2016 and November 2016, respectively. No trial dates have been set in *Seabrook* and *Grant*. However, once the defendant's identity is officially disclosed as a witness in any of these cases, the necessity for continued sealing will have dissipated, and the Government will of course apprise the Court of any such change in circumstance affecting the need for continued sealing in this case.

For the foregoing reasons, the Government respectfully requests that the defendant's Information, related charging paperwork, waiver of indictment and plea remain under seal, and that docketing of those materials be delayed until further order of this Court.   Counsel for the defendant joins in this request.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:_____/s/_____

Martin Bell / Russell Capone / Kan M. Nawaday / Lauren Schorr
Assistant United States Attorneys
Southern District of New York
(212) 637-5361 / 2247 / 2311 / 2299

Attch.

Cc:    Alan Levine, Esq.
       Laura Birger, Esq.
       Counsel for the Defendant
       (By electronic mail)

# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 20, 2016

**REQUST TO BE FILED**
**UNDER SEAL**

**BY EMAIL**
The Honorable Richard J. Sullivan
United States District Judge
United States District Court for the
    Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   <u>United States</u> v. <u>Jona Rechnitz</u>, **16 Cr. 389 (RJS)**

Dear Judge Sullivan:

On or about July 13, 2016, this Court issued an order directing the Government and counsel for the defendant, Jona Rechnitz, to submit under seal a letter explaining the need for the continued sealing of this matter in light of recent events and public reporting on the defendant's cooperation (the "July 13 Order").[1] The Government respectfully submits this letter in response to the July 13 Order.

BACKGROUND

On or about June 6, 2016, the defendant pled guilty before Your Honor to a conspiracy to commit honest services fraud, in violation of Title 18, United States Code, Section 1349,

---

[1] On or about June 22, 2016, Janon Fisher, on behalf of online publication DNAinfo New York, submitted a letter to the Court seeking disclosure of information relating to what the letter characterized as a sealed matter involving the plea of a cooperating witness (the "DNAinfo Letter"). On or about June 24, 2016, the Honorable P. Kevin Castel, presiding as Part 1 Judge, directed the Government to submit a response to the DNAinfo Letter that "need not, in the first instance, confirm the existence of any matter that is under seal, but should address the lawfulness of its practices in obtaining sealing and delayed docketing orders and the scope of any right of public access thereto" (the "June 24 Order"). The Government submitted a response on or about July 1, 2016, to the Honorable Andrew L. Carter, presiding as Part 1 Judge, and DNAinfo submitted a reply on or about July 8, 2016. That matter was subsequently assigned to the Honorable Ronnie Abrams, presiding as Part 1 Judge, who then referred it to Your Honor.

pursuant to a cooperation agreement. In advance of the defendant's plea, upon application from the Government, the Court issued an order, dated June 3, 2016, directing that: (1) the Information and related paperwork in this matter be sealed until further order of the Court; (2) the courtroom shall be closed for the defendant's waiver and indictment and plea; (3) the transcript of the defendant's waiver of indictment and plea shall be sealed until further order of the Court; and (4) the docketing of the Information, related charging paperwork, the waiver of indictment and plea shall be delayed until further order of the Court (the "June 3 Order"). The Court concluded that sealing, delayed docketing, and closure of the courtroom was necessary because "active law enforcement investigations would be compromised if the government's application is not granted." (June 3 Order at 1.)

Since the defendant's plea in this case, the Government has charged several individuals based, in part, on the defendant's cooperation, and those cases are also pending in this Court. United States v. Seabrook, 16 Cr. 467 (ALC); United States v. Grant, et al., 16 Cr. 468 (GHW). In connection with those cases, there has been speculation in the press about the defendant's cooperation with the Government. To date, however, the Government has not referred to the defendant by name in any publicly filed document or otherwise.

ARGUMENT

The Government respectfully submits that continued sealing and delayed docketing in this case is necessary to protect ongoing investigations of additional uncharged targets and the safety of the defendant.

Although there is a qualified right of public access to court documents under the First Amendment and common law, the Second Circuit has recognized that documents may be filed and maintained under seal where an ongoing criminal investigation may be jeopardized or to protect a cooperating defendant's safety. See United States v. Cojab, 996 F.2d 1404, 1408 (2d Cir. 1993) ("we have recognized as additional sufficient reasons for closure and sealing those occasions where an ongoing government investigation may be jeopardized"); United States v. Haller, 837 F.2d 84, 88 (2d Cir. 1988) (affirming decision to seal that portion of a plea agreement that referred to a defendant's ongoing cooperation); Fed. R. Crim. P. 49.1(d) and (e) & advisory committee note (permitting a court to order filings to be made under seal, and explicitly listing, as examples, "motions for downward departure for substantial assistance" and "plea agreements indicating cooperation"). The Second Circuit also has recognized that docketing the applications to seal materials relating to a cooperating witness could be prejudicial, and in such cases the applications themselves and related notes to the docket could be sealed. See United States v. Alcantara, 396 F.3d 189, 200 n.8 (2d Cir. 2005).

As a general matter, and in accordance with established Second Circuit precedent, it is the Government's practice to request sealing of materials relating to cooperating witnesses when sealing is necessary to protect the witness's safety, to protect the integrity of ongoing law

enforcement efforts, and/or to protect the secrecy of sensitive matters affecting a criminal proceeding. See, e.g., Cojab, 996 F.2d at 1407-09; Haller, 837 F.2d at 88. In addition, where even notice of an application to seal such materials could alert other individuals to the existence of the cooperating witness, and thus put the witness's safety at risk or jeopardize ongoing investigations, it is the Government's practice to seek delayed docketing of entries relating to cooperating witnesses. See Cojab, 996 F.2d at 1408-09.

Here, the Government believes that continued sealing of court documents relating to the defendant and delayed docketing are both necessary to protect the integrity of ongoing criminal investigations and the defendant's safety. As noted above, in connection with the defendant's cooperation, he has provided the Government with detailed information concerning his criminal activities and those of his former associates. The Information and the defendant's plea both made reference (although not by name) to other participants in these crimes. Although two cases arising in part from the defendant's information have been indicted, the Government continues to investigate additional crimes and additional individuals. In particular, the Government is actively investigating two additional bribery schemes. First, the Government is actively investigating a fundraiser (the "Fundraiser") for an elected official in connection with promises of official acts made to donors to that elected official ("Elected Official-1"). This Fundraiser had many dealings and interactions with the defendant, including discussions regarding official actions that the Fundraiser would attempt to make happen as a result of the defendant's donations.

Rechnitz's cooperation against public officials – as opposed to the law enforcement officials and individuals involved with the Correction Officers Benevolent Association in the charged matters – is evident on the face of the sealed Information in this matter. Beyond that categorical difference, Rechnitz specifically discussed the Fundraiser and (although not by name) during his guilty plea allocution. Public disclosure of the limited materials that exist in this matter – the Information and the defendant's plea – could alert these individuals to the existence of the investigations, hindering law enforcement efforts to pursue those investigations. For instance, public disclosure of the defendant's cooperation could provide individuals under investigation an opportunity to obstruct the investigation by tampering with witnesses, destroying documents, or colluding with others involved, among other things.

Furthermore, should the defendant's identity and court documents be made public, the Government submits that there is a substantial risk to the safety of the defendant and his family. In this case, public reports speculating about the defendant's cooperation have already generated threats against him and his family. The defendant has received voicemails containing such threats. In one, an anonymous caller said "you scumbag, I know where you live, I know who you are, your family."

As noted above, several press reports have speculated about the identity of the defendant. However, a press report suggesting the identity of a cooperating witness "is not the functional equivalent of officially acknowledging the cooperating witness, let alone the information that the witness has provided." See, e.g., United States v. Smith, 985 F. Supp. 2d 506, 533 (S.D.N.Y. 2013). The Government has not officially acknowledged the identity of the defendant. As noted above, the defendant has already been threatened in connection with his cooperation with the Government. Public confirmation of the defendant's case and cooperation creates an even greater risk that these or other individuals who have singled the defendant out, at least for threats, will continue to target him, perhaps more aggressively, at great risk to the defendant and his family. Moreover, officially disclosing the name of the defendant would provide individuals under investigation an opportunity to engage in obstructive behavior as to the ongoing investigations by, among other things, harassing the defendant or other witnesses.

For the foregoing reasons, the Government respectfully requests that the defendant's Information, related charging paperwork, waiver of indictment and plea remain under seal, and that docketing of those materials be delayed until further order of this Court. Counsel for the defendant joins in this request.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:_____/s/_____
Martin Bell / Russell Capone / Kan Nawaday / Lauren Schorr
Assistant United States Attorneys
Southern District of New York
(212) 637-5361 / 2247 / 2311 / 2299



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 7, 2016

**REQUEST TO BE FILED**
**UNDER SEAL**

**By Electronic Mail**

The Honorable Richard J. Sullivan
United States District Judge
United States District Court for the
    Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    **United States** v. **Jona Rechnitz**, 16 Cr. 389 (RJS)

Dear Judge Sullivan:

    The Government respectfully submits this letter to inform the Court of the need for continued sealing of the matters in this case.  For the Court's reference, the Government attaches as <u>Exhibit A</u>, the Government's most recent submission on this matter dated October 6, 2016. (the "October 6 Letter").

    The investigations described in the letter submitted by the Government on September 12, 2016 (the "September 12 Letter," attached to the October 6 Letter as Exhibit A) are ongoing, and the Government believes that continued sealing of court documents relating to the defendant and delayed docketing both remain necessary to protect the integrity of ongoing criminal investigations and the defendant's safety.

    *First*, the defendant's cooperation in the uncharged cases described in the Government's September 12 Letter of the persons described as the "Fundraiser, "Elected Official-1," and ██████████████████ are ongoing.  As noted in the Government's prior letters on this matter, public disclosure of the limited materials that exist in this matter – the Information and the defendant's plea – could alert these individuals, as well as witnesses to the conduct being investigated, to the existence of the investigations and have adverse consequences  For one charges have not yet been brought against ████████████████████████████
██████████        Thus, premature public disclosure of the defendant's cooperation *before* formal

charges have been brought could have an effect on the interests of ████████████ ████████████████████████████ and also could hamper the Government's ability to ██████████s.  *See United States* v. *Cojab*, 996 F.2d 1404, 1408 (2d Cir. 1993) ("we have recognized as additional sufficient reasons for closure and sealing those occasions where an ongoing government investigation may be jeopardized"); *United States* v. *Haller*, 837 F.2d 84, 88 (2d Cir. 1988) (affirming decision to seal that portion of a plea agreement that referred to a defendant's ongoing cooperation).

Second, the Government respectfully submits that continued sealing is necessary to ensure the continued safety of the defendant.  Although the Government is unaware of any additional threats to the defendant since the submission of the October 6 Letter, official disclosure of the defendant's identity and cooperation would likely lead to renewed threats against him or his family.

Third, the sealing of this case would not be indefinite.  The defendant may testify in a case pending before the Honorable Katherine B. Forrest in *United States* v. *Peralta*, 16 Cr. 354 (KBF).  Since the submission of the September 12 Letter, a trial date of May 15, 2017 has been set in that case.  Further, the next pretrial conferences in the other two charged cases in which the defendant may testify -- *United States* v. *Grant, et al.*, 16 Cr. 468 (GHW) and *United States* v. *Seabrook, et al.*, 16 Cr. 467 (ALC), are scheduled for February 2017 and January 2017, respectively.  No trial dates have been set in *Seabrook* and *Grant*.  However, once the defendant's identity is officially disclosed as a witness in any of these cases, the necessity for continued sealing will have dissipated, and the Government will of course apprise the Court of any such change in circumstance affecting the need for continued sealing in this case.

For the foregoing reasons, the Government respectfully requests that the defendant's Information, related charging paperwork, waiver of indictment and plea remain under seal, and that docketing of those materials be delayed until further order of this Court.  Counsel for the defendant joins in this request.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:_____/s/_____
Martin Bell / Russell Capone / Kan M.
Nawaday / Lauren Schorr
Assistant United States Attorneys
Southern District of New York
(212) 637-5361 / 2247 / 2311 / 2299

Attch.

Cc:   Alan Levine, Esq.
Laura Birger, Esq.
Counsel for the Defendant
(By electronic mail)

2

# Exhibit A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 6, 2016

## REQUEST TO BE FILED
## UNDER SEAL

### By Electronic Mail

The Honorable Richard J. Sullivan
United States District Judge
United States District Court for the
   Southern District of New York
500 Pearl Street
New York, New York 10007

### Re: United States v. Jona Rechnitz, 16 Cr. 389 (RJS)

Dear Judge Sullivan:

The Government respectfully submits this letter to inform the Court of the need for continued sealing of the matters in this case. For the Court's reference, the Government attaches as Exhibit A, the Government's most recent submission on this matter dated September 12, 2016. (the "September 12 Letter").

The investigations described in the September 12 Letter are ongoing, and the Government believes that continued sealing of court documents relating to the defendant and delayed docketing both remain necessary to protect the integrity of ongoing criminal investigations and the defendant's safety.

*First,* the defendant's cooperation in the uncharged cases described in the Government's September 12 Letter of the persons described as the "Fundraiser, "Elected Official-1," and ▮▮▮▮▮▮▮▮▮ are ongoing. As noted in the Government's prior letters on this matter, public disclosure of the limited materials that exist in this matter – the Information and the defendant's plea – could alert these individuals, as well as witnesses to the conduct being investigated, to the existence of the investigations and have adverse consequences. For one, charges have not yet been brought against ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮ Thus, premature public disclosure of the defendant's cooperation *before* formal charges have been brought could have an effect on the interests of ▮▮▮▮▮▮▮▮▮

                and also could hamper the Government's ability to continue to effectively investigate these cases. *See United States* v. *Cojab*, 996 F.2d 1404, 1408 (2d Cir. 1993) ("we have recognized as additional sufficient reasons for closure and sealing those occasions where an ongoing government investigation may be jeopardized"); *United States* v. *Haller*, 837 F.2d 84, 88 (2d Cir. 1988) (affirming decision to seal that portion of a plea agreement that referred to a defendant's ongoing cooperation).

*Second*, the Government respectfully submits that continued sealing is necessary to ensure the continued safety of the defendant. Although the Government is unaware of any additional threats to the defendant since the submission of the September 12 Letter, official disclosure of the defendant's identity and cooperation would likely lead to renewed threats against him or his family.

*Third*, the sealing of this case would not be indefinite. The defendant may testify in a case pending before the Honorable Katherine B. Forrest in *United States* v. *Peralta*, 16 Cr. 354 (KBF). Since the submission of the September 12 Letter, a trial date of May 15, 2017 has been set in that case. Further, the next pretrial conferences in the other two charged cases in which the defendant may testify -- *United States* v. *Grant, et al.*, 16 Cr. 468 (GHW) and *United States* v. *Seabrook, et al.*, 16 Cr. 467 (ALC), are scheduled for October 2016 and November 2016, respectively. No trial dates have been set in *Seabrook* and *Grant*. However, once the defendant's identity is officially disclosed as a witness in any of these cases, the necessity for continued sealing will have dissipated, and the Government will of course apprise the Court of any such change in circumstance affecting the need for continued sealing in this case.

For the foregoing reasons, the Government respectfully requests that the defendant's Information, related charging paperwork, waiver of indictment and plea remain under seal, and that docketing of those materials be delayed until further order of this Court. Counsel for the defendant joins in this request.

                        Respectfully submitted,

                        PREET BHARARA
                        United States Attorney

                    By: Kan M. Nawaday
                        Martin Bell / Russell Capone / Kan M.
                        Nawaday / Lauren Schorr
                        Assistant United States Attorneys
                        Southern District of New York
                        (212) 637-5361 / 2247 / 2311 / 2299

Attch.

Cc:    Alan Levine, Esq.
       Laura Birger, Esq.
       Counsel for the Defendant
       (By electronic mail)

# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 12, 2016

## REQUST TO BE FILED
## UNDER SEAL

### By Electronic Mail

The Honorable Richard J. Sullivan
United States District Judge
United States District Court for the
   Southern District of New York
500 Pearl Street
New York, New York 10007

**Re:   United States v. Jona Rechnitz, 16 Cr. 389 (RJS)**

Dear Judge Sullivan:

The Government respectfully submits this letter to inform the Court of the need for continued sealing of the matters in this case. For the Court's reference, the Government attaches as Exhibit A, the Government's most recent submission on this matter dated July 20, 2016. (the "July 20 Letter").

For the reasons set forth below and in the July 20 Letter, the Government believes that continued sealing of court documents relating to the defendant and delayed docketing are both necessary to protect the integrity of ongoing criminal investigations and the defendant's safety.

*First*, the defendant's cooperation in uncharged cases is ongoing and in particular, the two criminal investigations of political figures described in the July 20 Letter of a fundraiser and two elected officials are ongoing and active. In brief, the Government continues to investigate a fundraiser (the "Fundraiser") for an elected official in connection with promises of official acts made to donors to that elected official ("Elected Official-1"). This Fundraiser had many dealings and interactions with the defendant, including discussions regarding official actions that the Fundraiser would attempt to make happen as a result of the defendant's donations.

        Public disclosure of the limited materials that exist in this matter – the Information and
the defendant's plea – could alert these individuals, as well as witnesses to the conduct being
investigated, to the existence of the investigations and have adverse consequences. For one,
charges have not yet been brought against ▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮ Thus, premature public disclosure of the defendant's cooperation *before* formal
charges have been brought could have an effect on the interests of ▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮ and also could hamper the Government's ability to
continue to effectively investigate these cases. Moreover, public disclosure of the defendant's
cooperation could provide individuals under investigation an opportunity to obstruct the
investigation by tampering with witnesses, destroying documents, or colluding with others
involved, among other things. *See United States* v. *Cojab*, 996 F.2d 1404, 1408 (2d Cir. 1993)
("we have recognized as additional sufficient reasons for closure and sealing those occasions
where an ongoing government investigation may be jeopardized"); *United States* v. *Haller*, 837
F.2d 84, 88 (2d Cir. 1988) (affirming decision to seal that portion of a plea agreement that
referred to a defendant's ongoing cooperation).

        *Second*, the Government respectfully submits that continued sealing is necessary to
ensure the continued safety of the defendant. Although the Government is unaware of any
additional threats to the defendant since the submission of the July 20 Letter, official disclosure
of the defendant's identity and cooperation would likely lead to renewed threats against him or
his family. As noted in the July 20 Letter, press reports merely speculating about the defendant's
cooperation resulted in the defendant receiving threatening voicemails. An official
acknowledgement of the defendant's identity as a cooperator would inevitably create an even
greater risk that individuals who have singled the defendant out, at least for threats, will continue
to target him, perhaps more aggressively, at great risk to the defendant and his family.
Moreover, officially disclosing the name of the defendant would provide individuals under
investigation an opportunity to engage in obstructive behavior as to the ongoing investigations
by, among other things, harassing the defendant or other witnesses.

        *Third*, the sealing of this case would not be indefinite. The defendant may testify in a
case pending before the Honorable Katherine B. Forrest in *United States* v. *Peralta*, 16 Cr. 354
(KBF), which is scheduled for trial on November 28, 2016 – the Government notes, however,
that defense counsel has sought an adjournment of that trial date until May 2017. Further, the
next pretrial conferences in the other two charged cases in which the defendant may testify --
*United States* v. *Grant, et al.*, 16 Cr. 468 (GHW) and *United States* v. *Seabrook, et al.*, 16 Cr.
467 (ALC), are scheduled for October 2016 and November 2016, respectively. No trial dates
have been set in *Seabrook* and *Grant*. However, once the defendant's identity is officially
disclosed as a witness in any of these cases, the necessity for continued sealing will have
dissipated, and the Government will of course apprise the Court of any such change in
circumstance affecting the need for continued sealing in this case.

2

For the foregoing reasons, the Government respectfully requests that the defendant's Information, related charging paperwork, waiver of indictment and plea remain under seal, and that docketing of those materials be delayed until further order of this Court.   Counsel for the defendant joins in this request.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:_____/s/_____
Martin Bell / Russell Capone / Kan M.
Nawaday / Lauren Schorr
Assistant United States Attorneys
Southern District of New York
(212) 637-5361 / 2247 / 2311 / 2299

Attch.

Cc:      Alan Levine, Esq.
Laura Birger, Esq.
Counsel for the Defendant
(By electronic mail)

3

# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 20, 2016

**REQUST TO BE FILED**
**UNDER SEAL**

**BY EMAIL**
The Honorable Richard J. Sullivan
United States District Judge
United States District Court for the
   Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   <u>United States</u> v. <u>Jona Rechnitz</u>, **16 Cr. 389 (RJS)**

Dear Judge Sullivan:

     On or about July 13, 2016, this Court issued an order directing the Government and counsel for the defendant, Jona Rechnitz, to submit under seal a letter explaining the need for the continued sealing of this matter in light of recent events and public reporting on the defendant's cooperation (the "July 13 Order").[1] The Government respectfully submits this letter in response to the July 13 Order.

BACKGROUND

     On or about June 6, 2016, the defendant pled guilty before Your Honor to a conspiracy to commit honest services fraud, in violation of Title 18, United States Code, Section 1349,

---

[1] On or about June 22, 2016, Janon Fisher, on behalf of online publication DNAinfo New York, submitted a letter to the Court seeking disclosure of information relating to what the letter characterized as a sealed matter involving the plea of a cooperating witness (the "DNAinfo Letter"). On or about June 24, 2016, the Honorable P. Kevin Castel, presiding as Part 1 Judge, directed the Government to submit a response to the DNAinfo Letter that "need not, in the first instance, confirm the existence of any matter that is under seal, but should address the lawfulness of its practices in obtaining sealing and delayed docketing orders and the scope of any right of public access thereto" (the "June 24 Order"). The Government submitted a response on or about July 1, 2016, to the Honorable Andrew L. Carter, presiding as Part 1 Judge, and DNAinfo submitted a reply on or about July 8, 2016. That matter was subsequently assigned to the Honorable Ronnie Abrams, presiding as Part 1 Judge, who then referred it to Your Honor.

pursuant to a cooperation agreement. In advance of the defendant's plea, upon application from the Government, the Court issued an order, dated June 3, 2016, directing that: (1) the Information and related paperwork in this matter be sealed until further order of the Court; (2) the courtroom shall be closed for the defendant's waiver and indictment and plea; (3) the transcript of the defendant's waiver of indictment and plea shall be sealed until further order of the Court; and (4) the docketing of the Information, related charging paperwork, the waiver of indictment and plea shall be delayed until further order of the Court (the "June 3 Order"). The Court concluded that sealing, delayed docketing, and closure of the courtroom was necessary because "active law enforcement investigations would be compromised if the government's application is not granted." (June 3 Order at 1.)

Since the defendant's plea in this case, the Government has charged several individuals based, in part, on the defendant's cooperation, and those cases are also pending in this Court. United States v. Seabrook, 16 Cr. 467 (ALC); United States v. Grant, et al., 16 Cr. 468 (GHW). In connection with those cases, there has been speculation in the press about the defendant's cooperation with the Government. To date, however, the Government has not referred to the defendant by name in any publicly filed document or otherwise.

ARGUMENT

The Government respectfully submits that continued sealing and delayed docketing in this case is necessary to protect ongoing investigations of additional uncharged targets and the safety of the defendant.

Although there is a qualified right of public access to court documents under the First Amendment and common law, the Second Circuit has recognized that documents may be filed and maintained under seal where an ongoing criminal investigation may be jeopardized or to protect a cooperating defendant's safety. See United States v. Cojab, 996 F.2d 1404, 1408 (2d Cir. 1993) ("we have recognized as additional sufficient reasons for closure and sealing those occasions where an ongoing government investigation may be jeopardized"); United States v. Haller, 837 F.2d 84, 88 (2d Cir. 1988) (affirming decision to seal that portion of a plea agreement that referred to a defendant's ongoing cooperation); Fed. R. Crim. P. 49.1(d) and (e) & advisory committee note (permitting a court to order filings to be made under seal, and explicitly listing, as examples, "motions for downward departure for substantial assistance" and "plea agreements indicating cooperation"). The Second Circuit also has recognized that docketing the applications to seal materials relating to a cooperating witness could be prejudicial, and in such cases the applications themselves and related notes to the docket could be sealed. See United States v. Alcantara, 396 F.3d 189, 200 n.8 (2d Cir. 2005).

As a general matter, and in accordance with established Second Circuit precedent, it is the Government's practice to request sealing of materials relating to cooperating witnesses when sealing is necessary to protect the witness's safety, to protect the integrity of ongoing law

enforcement efforts, and/or to protect the secrecy of sensitive matters affecting a criminal proceeding. See, e.g., Cojab, 996 F.2d at 1407-09; Haller, 837 F.2d at 88. In addition, where even notice of an application to seal such materials could alert other individuals to the existence of the cooperating witness, and thus put the witness's safety at risk or jeopardize ongoing investigations, it is the Government's practice to seek delayed docketing of entries relating to cooperating witnesses. See Cojab, 996 F.2d at 1408-09.

Here, the Government believes that continued sealing of court documents relating to the defendant and delayed docketing are both necessary to protect the integrity of ongoing criminal investigations and the defendant's safety. As noted above, in connection with the defendant's cooperation, he has provided the Government with detailed information concerning his criminal activities and those of his former associates. The Information and the defendant's plea both made reference (although not by name) to other participants in these crimes. Although two cases arising in part from the defendant's information have been indicted, the Government continues to investigate additional crimes and additional individuals. In particular, the Government is actively investigating two additional bribery schemes. First, the Government is actively investigating a fundraiser (the "Fundraiser") for an elected official in connection with promises of official acts made to donors to that elected official ("Elected Official-1"). This Fundraiser had many dealings and interactions with the defendant, including discussions regarding official actions that the Fundraiser would attempt to make happen as a result of the defendant's donations.

Rechnitz's cooperation against public officials – as opposed to the law enforcement officials and individuals involved with the Correction Officers Benevolent Association in the charged matters – is evident on the face of the sealed Information in this matter. Beyond that categorical difference, Rechnitz specifically discussed the Fundraiser and (although not by name) during his guilty plea allocution. Public disclosure of the limited materials that exist in this matter – the Information and the defendant's plea – could alert these individuals to the existence of the investigations, hindering law enforcement efforts to pursue those investigations. For instance, public disclosure of the defendant's cooperation could provide individuals under investigation an opportunity to obstruct the investigation by tampering with witnesses, destroying documents, or colluding with others involved, among other things.

Furthermore, should the defendant's identity and court documents be made public, the Government submits that there is a substantial risk to the safety of the defendant and his family. In this case, public reports speculating about the defendant's cooperation have already generated threats against him and his family. The defendant has received voicemails containing such threats. In one, an anonymous caller said "you scumbag, I know where you live, I know who you are, your family."

As noted above, several press reports have speculated about the identity of the defendant. However, a press report suggesting the identity of a cooperating witness "is not the functional equivalent of officially acknowledging the cooperating witness, let alone the information that the witness has provided." See, e.g., United States v. Smith, 985 F. Supp. 2d 506, 533 (S.D.N.Y. 2013). The Government has not officially acknowledged the identity of the defendant. As noted above, the defendant has already been threatened in connection with his cooperation with the Government. Public confirmation of the defendant's case and cooperation creates an even greater risk that these or other individuals who have singled the defendant out, at least for threats, will continue to target him, perhaps more aggressively, at great risk to the defendant and his family. Moreover, officially disclosing the name of the defendant would provide individuals under investigation an opportunity to engage in obstructive behavior as to the ongoing investigations by, among other things, harassing the defendant or other witnesses.

For the foregoing reasons, the Government respectfully requests that the defendant's Information, related charging paperwork, waiver of indictment and plea remain under seal, and that docketing of those materials be delayed until further order of this Court. Counsel for the defendant joins in this request.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____/s/_____
Martin Bell / Russell Capone / Kan
Nawaday / Lauren Schorr
Assistant United States Attorneys
Southern District of New York
(212) 637-5361 / 2247 / 2311 / 2299



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 9, 2016

**REQUEST TO BE FILED**
**UNDER SEAL**

**By Electronic Mail**

The Honorable Richard J. Sullivan
United States District Judge
United States District Court for the
   Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   **United States v. Jona Rechnitz, 16 Cr. 389 (RJS)**

Dear Judge Sullivan:

The Government respectfully submits this letter to inform the Court of the need for continued sealing of the matters in this case.

The investigations described in the letter submitted by the Government on September 12, 2016 are ongoing, and the Government believes that continued sealing of court documents relating to the defendant and delayed docketing both remain necessary to protect the integrity of ongoing criminal investigations and the defendant's safety.

*First*, the defendant's cooperation in the uncharged cases described in the Government's September 12 Letter of the persons described as the "Fundraiser, "Elected Official-1," and ▮▮▮▮▮▮▮▮▮▮ are ongoing.  As noted in the Government's prior letters on this matter, public disclosure of the limited materials that exist in this matter – the Information and the defendant's plea – could alert these individuals, as well as witnesses to the conduct being investigated, to the existence of the investigations and have adverse consequences.  For one, charges have not yet been brought against ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮▮  Thus, premature public disclosure of the defendant's cooperation *before* formal charges have been brought could have an effect on the interests o ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and also could hamper the Government's ability to continue to effectively investigate these cases.  *See United States* v. *Cojab*, 996 F.2d 1404, 1408

(2d Cir. 1993) ("we have recognized as additional sufficient reasons for closure and sealing those occasions where an ongoing government investigation may be jeopardized"); *United States* v. *Haller*, 837 F.2d 84, 88 (2d Cir. 1988) (affirming decision to seal that portion of a plea agreement that referred to a defendant's ongoing cooperation).

     *Second*, the Government respectfully submits that continued sealing is necessary to ensure the continued safety of the defendant.  Although the Government is unaware of any additional threats to the defendant since the submission of the October 6, 2016 Letter, official disclosure of the defendant's identity and cooperation would likely lead to renewed threats against him or his family.

     *Third*, the sealing of this case would not be indefinite.  The defendant may testify in a case pending before the Honorable Katherine B. Forrest in *United States* v. *Peralta*, 16 Cr. 354 (KBF).  Since the submission of the September 12 Letter, a trial date of May 15, 2017 has been set in that case.  Further, the next pretrial conferences in the other two charged cases in which the defendant may testify -- *United States* v. *Grant, et al.*, 16 Cr. 468 (GHW) and *United States* v. *Seabrook, et al.*, 16 Cr. 467 (ALC), are scheduled for February 2017 and January 2017, respectively.  No trial dates have been set in *Seabrook* and *Grant*.  However, once the defendant's identity is officially disclosed as a witness in any of these cases, the necessity for continued sealing will have dissipated, and the Government will of course apprise the Court of any such change in circumstance affecting the need for continued sealing in this case.

     For the foregoing reasons, the Government respectfully requests that the defendant's Information, related charging paperwork, waiver of indictment and plea remain under seal, and that docketing of those materials be delayed until further order of this Court.   The Government also requests that the Government be able to provide the Court with a further update in 60 days.  Counsel for the defendant joins in this request.

                         Respectfully submitted,

                         PREET BHARARA
                         United States Attorney

               By:_____/s/_____
                         Martin Bell / Russell Capone / Kan M.
                         Nawaday / Lauren Schorr
                         Assistant United States Attorneys
                         Southern District of New York
                         (212) 637-5361 / 2247 / 2311 / 2299

Attch.

Cc:    Alan Levine, Esq.
       Laura Birger, Esq.
       Counsel for the Defendant
       (By electronic mail)



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 10, 2017

**REQUEST TO BE FILED**
**UNDER SEAL**

**By Electronic Mail**

The Honorable Richard J. Sullivan
United States District Judge
United States District Court for the
    Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    <u>United States</u> v. <u>Jona Rechnitz</u>, 16 Cr. 389 (RJS)

Dear Judge Sullivan:

The Government respectfully submits this letter to inform the Court of the need for continued sealing of the matters in this case.

The investigations described in the letter submitted by the Government on September 12, 2016, attached as <u>Exhibit A</u>, are ongoing, and the Government believes that continued sealing of court documents relating to the defendant and delayed docketing both remain necessary to protect the integrity of ongoing criminal investigations and the defendant's safety.

*First*, the defendant's cooperation in the uncharged cases described in the Government's September 12 Letter of the persons described as the "Fundraiser, "Elected Official-1," and ███████████████████ are ongoing.  As noted in the Government's prior letters on this matter, public disclosure of the limited materials that exist in this case – the Information and the defendant's plea – could alert these individuals, as well as witnesses to the conduct being investigated, to the existence of the investigations and have adverse consequences.  For one, charges have not yet been brought against ████████████ ██████████████████ ██████  Thus, premature public disclosure of the defendant's cooperation *before* formal charges have been brought could have an effect on the interests of █████████████ ██████████████████████████ and also could hamper the Government's ability to continue to effectively investigate these cases.  *See United States* v. *Cojab*, 996 F.2d 1404, 1408

(2d Cir. 1993) ("we have recognized as additional sufficient reasons for closure and sealing those occasions where an ongoing government investigation may be jeopardized"); *United States* v. *Haller*, 837 F.2d 84, 88 (2d Cir. 1988) (affirming decision to seal that portion of a plea agreement that referred to a defendant's ongoing cooperation).

*Second*, the Government respectfully submits that continued sealing is necessary to ensure the continued safety of the defendant.  Although the Government is unaware of any additional threats to the defendant since the submission of its September 12 Letter, official disclosure of the defendant's identity and cooperation would likely lead to renewed threats against him or his family.

*Third*, the sealing of this case would not be indefinite.  The defendant may testify in a case pending before the Honorable Katherine B. Forrest in *United States* v. *Peralta*, 16 Cr. 354 (KBF).  Since the submission of the September 12 Letter, a trial date of May 15, 2017 has been set in that case.  Further, an October 18, 2017 trial date has been set in another charged case in which the defendant may testify, *United States* v. *Seabrook, et al.*, 16 Cr. 467 (ALC).  The next pretrial conference in *United States* v. *Grant, et al.*, 16 Cr. 468 (GHW), a third case in which the defendant may testify, is scheduled for March 31, 2017.  No trial date has been set in that case.  Once the defendant's identity is officially disclosed as a witness in any of these cases, the necessity for continued sealing will have dissipated, and the Government will apprise the Court of any such change in circumstance affecting the need for continued sealing in this case.

For the foregoing reasons, the Government respectfully requests that the defendant's Information, related charging paperwork, waiver of indictment and plea remain under seal, and that docketing of those materials be delayed until further order of this Court.   The Government also requests that the Government be able to provide the Court with a further update in 60 days.  Counsel for the defendant joins in this request.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:_____/s/_____
Martin Bell / Russell Capone / Kan M.
Nawaday / Lauren Schorr
Assistant United States Attorneys
Southern District of New York
(212) 637-5361 / 2247 / 2311 / 2299

Attch.

Cc:    Alan Levine, Esq.
       Laura Birger, Esq.
       Counsel for the Defendant
       (By electronic mail)

2