UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
UNITED STATES OF AMERICA,

    -against-

JONA RECHNITZ,

                      Defendant.

------------------------------------------------------------- X

**ORDER DENYING MOTION FOR RECONSIDERATION AND SETTING NEW DATES**

16 Cr. 389 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Defendant Rechnitz moves for reconsideration of my order of December 17, 2020, denying his motion to disqualify me from deciding the restitution issues pursuant to Second Circuit mandate. *See* ECF No. 118. His motion is denied. Rechnitz also moves to vacate that part of my order asking the parties to submit further information relevant to my task in response to the mandate. *See id.* That, too, is denied.

        Rechnitz' motion reargues matters he previously argued, and advances information known to him before his previous motion. However, a motion to reconsider "is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005); *Jackson v. Goord*, 664 F. Supp. 2d 307, 313 (S.D.N.Y. 2009); *Rosner v. United States*, No. 16-CV-7256 (JGK), 2018 WL 5981945, at *1 (S.D.N.Y. Nov. 14, 2018). This ground alone is sufficient cause to deny Rechnitz' motion.

        Rechnitz bases his motion on his supposed testimony at the Seabrook trial. Without citation, he claims to have said that Kaplan was one of his "primary contacts at the Platinum Partners fund and was directly involved in facilitating the investment of COBA's funds." ECF No. 118, at 1. That is not so; the actual testimony differs. Rechnitz told Seabrook

he was Huberfeld's partner, "pretty familiar" with the company and its important people, Mark Nordlicht, Uri Landsman, and Gilad Kanter.  Seabrook 2nd Trial Tr. 642-43.  Kaplan is not mentioned.  Rechnitz, and only Rechnitz (with his partner, Jeremy Reichberg), arranged Huberfeld's bribe of Seabrook in exchange for an investment of COBA's annuity fund for NYC corrections officers, an investment, first, of five-to-seven million dollars, then $10 million, then $15 million and, finally, $20 million.  Seabrook 2nd Trial Tr. 648, 650.  Seabrook's cut, to be given to him at the end of the year, was 50 percent of Platinum's 20 percent of the profits of the investment, estimated to be a $100,000 kick-back to Seabrook.  Seabrook 2nd Trial Tr. 648.  The deal was made by Rechnitz and Seabrook at Seabrook's office, and by Rechnitz and Huberfeld at Platinum's executive conference room, Seabrook 2nd Trial Tr. 652-53; there is no mention of Kaplan.  *Id.*  When the COBA investment finally came, Kaplan was delegated to receive it.  Tommy Reynolds, COBA's financial adviser, asked Kaplan and two others to send him Platinum's quarterly market values and net returns; Kaplan asked Rechnitz, "Would you like me to handle it or do you prefer that someone else take care of it."  Rechnitz answered, "Ok answer him."  Seabrook 2nd Trial Tr. 679-80, ECF No. 118, Ex. A.  Later, Huberfeld scolded Kaplan for sending papers to Reynolds.  Seabrook 2nd Trial Tr. 681.

Huberfeld did not pay Seabrook $100,000, as promised, in December 2014, claiming that "the fund did not perform as expected and that he did not do as well as he had thought."  Seabrook 2nd Trial Tr. 684.  Through Rechnitz, Huberfeld and Seabrook settled at $60,000, with a promise of $100,000 per year thereafter, one-half percent of COBA's continuing investment of $20 million, payable quarterly.  Seabrook 2nd Trial Tr. 684.  Rechnitz advanced $60,000 to Seabrook on December 11, 2014, Seabrook 2nd Trial Tr. 694, and Huberfeld

reimbursed Rechnitz with Platinum's funds, disguised as payment for courtside basketball tickets.  Seabrook 2nd Trial Tr. 687.  Kaplan was neither mentioned nor involved.

There is no basis for Rechnitz assertions that "Kaplan served as one of Mr. Rechnitz's primary contacts" or that Kaplan "was directly involved in facilitating the investment of COBA's funds."  ECF No. 118, at 1.  There is no basis for Rechnitz assertion that he discussed COBA's $10 million investment as an "initial" investment.  *Id.* at 2.  The word "initial" does not appear in the e-mail string attached to Rechnitz' letter.  Rechnitz' characterization, answering the question of the prosecutor, described his own understanding, not Kaplan's.  Seabrook 2nd Trial Tr. 680:15-16.  There is no basis for Rechnitz' assertion that Kaplan "was part of the core group at Platinum Partners," as my previous paragraph makes clear.  There is no basis for Rechnitz' assertion that he had "numerous interactions with Kaplan," ECF No. 118, at 2; apart from the e-mail string, there is no reference to any other interaction.  Rechnitz' assertions are made-up, intended to create an issue for disqualification that does not exist.

I did not take Rechnitz' plea.  But I saw him testify extensively, as a key witness against Seabrook.  And I considered the long and sordid tale of Rechnitz' bribes and attempted bribes, favors, paid vacation trips, call-girls and other blandishments, extending even to attempted bribery of the Mayor of New York City and bribery of its Chief of Police, laid out in excruciating detail at the trial.  I also considered his role as a cooperating witness, and I heard the perspectives about his help offered by Martin Bell, the AUSA who brilliantly tried the case.  I had all this information before me when I sentenced Rechnitz, and I have the information at hand in responding to the Second Circuit's remand, and COBA's motion to reconsider, my previous restitution determination, pursuant to the Crime Victims Rights Act ("CVRA"), 18 U.S.C. 3771.

Justice will not be served were I to transfer my duty to another judge, just because Rechnitz wants me to do so.

Rechnitz seeks additional relief, that he be excused from responding to the court's order seeking further information from the parties. The Court of Appeals remanded to me "to allow the district court to reconsider its restitution determination in light of new information about both Respondents assets and his cooperation with the district courts efforts to determine those assets. ECF No. 92, at 2. The remand also asked the district court to reconsider "its assessment of Respondent's culpability" in that connection. *Id*. Pursuant to the mandate, I ordered the parties "to provide updated information regarding Rechnitz' financial [] capability to pay restitution." ECF No. 107. I also asked Probation to inquire further about the same subject, and to update the court on the litigation described in COBA's complaint initiating these proceedings. I am doing that which the Second Circuit required. Rechnitz has no proper basis to complain.

Rechnitz' motion for reconsideration is denied in all respects. The Clerk is instructed to close the open motion (ECF No. 118).

SO ORDERED.

Dated:  January 8, 2021           /s/ Alvin K. Hellerstein
        New York, New York        ALVIN K. HELLERSTEIN
                                  United States District Judge